UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

Chapter 7

HARVEY HERNANDEZ,

        Debtor(s).

Case No. 10-26989-BKC-RAM

_____/

SONEET KAPILA, CHAPTER 7 TRUSTEE    Adv. Case No. _____
FOR THE ESTATE OF HARVEY HERNANDEZ,

        Plaintiff,

v.

HARVEY HERNANDEZ,

        Defendant.

_____/

### TRUSTEE'S COMPLAINT OBJECTING TO DEBTOR'S DISCHARGE

Soneet Kapila, as Chapter 7 Trustee (the *"Trustee"*) for the estate of Harvey Hernandez (the *"Debtor"*), by and through his undersigned counsel and pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), and 727(a)(5), and Federal Rule of Bankruptcy Procedure 7001, files this Complaint Objecting to the Debtor's Discharge, and in support states as follows::

#### Jurisdiction, Venue and Parties

1.    This is an Adversary Proceeding filed pursuant to 11 U.S.C. §§ 727(a)(2)(A), 727(a)(3), 727(a)(4)(A), and 727(a)(5), and Federal Rule of Bankruptcy Procedure 7001(4).

2.    The is a core proceeding under 28 U.S.C. § 157(b)(2)(J).

3.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b).

4.    Venue is proper in this Court pursuant to 28 U.S.C. §1409 as the Chapter 7 bankruptcy case of the Debtor is pending in this District.

5.    The Trustee is the duly-qualified and acting Chapter 7 Trustee for the Debtor's

Estate.

6.    The Debtor is a debtor in a proceeding under Chapter 7 of the Bankruptcy Code.

### General Allegations

### Background of the Debtor

7.    The Debtor is an ex-condominium developer who was very successful during the

South Florida condominium boom between 2003 through 2006.

8.    H&H Development Co. (*"H&H Development"*) was a wholly owned corporation

of the Debtor that the Debtor used to build/convert condominium projects.

9.    In order to build or convert his condominium projects, the Debtor had to borrow

funds from lenders – either in his individual name or guaranteed by him.

10.    Due to the failing real estate market in 2007 and 2008, the Debtor defaulted on

numerous loans.  As a result, lenders sought to collect on their loans against the Debtor.

11.    On March 11, 1008, Regions Bank instituted an action against the Debtor and his

company, 100 Douglas Apartments, LLC.  On November 26, 2008, Regions Bank obtained a

Summary Final Judgment of Foreclosure in the amount of $1,425,373.86 (case no. 08-13135 CA

27).

12.    On August 13, 2008, Briarrose Invest. Ltd., instituted an action against the Debtor

and his company, Bird Road, LLC.  On April 14, 2009, Briarrose Invest, Ltd., obtained a Final

Default Judgment in the amount of $1,619,041.10 (case no. 08-46755 CA 27) against the Debtor.

13.    On July 3, 2008, Bank Leumi instituted an action against the Debtor and his

company, Bird Road Holdings, LLC.  On October 7, 2009, Bank Leumi obtained a Final

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00900827.DOC.}

Deficiency Judgment in the amount of $1,325,743.89 (case no. 08-38483 CA 05) against the Debtor.

14.     As of January 2008, the Debtor was indebted to his ex-wife in the approximate amount of $500,000 pursuant to the terms of a divorce settlement agreement.

15.     Since at least January, 2008, the Debtor was insolvent or in the zone of insolvency.

## The Debtor Files Bankruptcy

16.     On June 16, 2010, the Debtor filed a Voluntary Petition for relief under Chapter 7 of the United States Bankruptcy Code.

17.     In his Summary of Schedules, the Debtor listed $18,224 in personal property assets and $7,521,112.92 in unsecured claims.

18.     In his original schedule B filed June  16, 2010, the Debtor listed three b ank accounts: Mercantil Bank (with a balance of $389); Eastern National Bank (with a balance of $200); and Coconut Grove Bank (with a balance of $200).

19.     On August 19, 2010, the Trustee served the Debtor with his Rule 2004 Examination Notice *Duces Tecum* (the *"Notice"*).  Through the Notice, the Trustee requested that the Debtor produce the following documents:

> Any and all Documents regarding your transfer of $320,000 to Manuel Hernandez on March 16, 2008.

> Any and all Documents regarding H&H Development Co.'s transfer of $1,100,000 to Manuel Hernandez on April 10, 2008.

> Any and all business related Documents between yourself and Manuel Hernandez, including but not limited to, any and all loan agreements, promissory notes, and correspondence.

> Any and all Documents regarding Beaufort Advisors, Ltd.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00900827.DOC.}

All bank statements for Real Estate Advisors, Inc., from January 1, 2006 through today.

All bank statements for Cyber Warehouse, Inc., from January 1, 2006 through today, including the bank statements from SchwabOne.

All bank statements for H&H Development Co. from January 1, 2006 through today, including the bank statements from Eastern National Bank.

All of your bank statements from Eastern National Bank from January 1, 2006 through today.

All of your bank statements from Commerce Bank from January 1, 2006 through today.

All bank statements for MED Investments, LLC, from January 1, 2006 through today, including the bank statements from Ocean Bank.

Any and all statements for any bank accounts that you have held in your name, either individually or jointly, from January 2006 through today.

Any and all statements for any bank accounts that you have had signature authority from January 1, 2006, through today.

Any and all agreements between yourself and The Solution Group.

Any and all agreements between Real Estate Advisors, Inc., and The Solution Group.

All bank statements for H&H Development at Gallery Art from January 1, 2006 through today.

All bank statements for H&H Development at 430 Hibiscus, LLC, from January 1, 2006 through today, including the bank statements from Eastern National Bank.

Any and all business related documents between yourself and Carlos Marquez.

20.     The Debtor never produced, and still has not produced, the most relevant documents requested in the Notice, those being the documents regarding Manuel Hernandez, Beaufort Advisors, Ltd., Cyber Warehouse, Inc., and all the bank accounts for which he had signature authority (the *"Key Documents"*).

21.    On January 19, 2011, and only after the Trustee had engaged in substantial discovery, the Debtor filed his Amended Schedules, which included an Amended Schedule B that listed a bank account at Bank Atlantic (the *"BA Account"*), Merrill Lynch (the *"Merrill Lynch Account"*), and Eastern National Bank (the *"ENB Account"*)(collectively, the *"Missing Accounts"*), each allegedly owned by the Debtor's uncle, Manuel Hernandez (the *"Debtor's Uncle"*). The Debtor stated in his Amended Schedule B that he had power of attorney over the Missing Accounts.

22.    Only after the Trustee engaged in significant discovery with third parties (and is still engaging in significant discovery with third parties), and committed significant estate resources in obtaining such discovery, did the Trustee obtain many of the Key Documents.

23.    After the Trustee's review of the Key Documents (and Missing Account documents) received thus far from third parties, the Trustee understands, and will discuss below, why the Debtor did not produce any of the Key Documents or Missing Account Documents.

### The Debtor Transfers Over One Million Dollars to His Uncle

24.    On March 16, 2008, the Debtor transferred $320,000 (the *"320 Transfer"*) from his individual account to his Uncle. A copy of the check evidencing such transfer is attached as Exhibit "A."

25.    The Debtor's Uncle is a Venezuelan citizen who resides in Venezuela.

26.    On April 10, 2008, the Debtor's wholly-owned development company, H&H Development, transferred $1,100,000 (the *"1.1 Transfer"*) to the Debtor's Uncle (collectively, the 320 Transfer and the 1.1 Transfer shall be referred to as the *"Uncle Transfers"*). A copy of the check evidencing such transfer is attached as Exhibit "B."

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00900827.DOC.}

27.    The Debtor testified at his Rule 2004 Examination that he made the Uncle Transfers to the Debtor's Uncle to repay a loan the Debtor's Uncle had made to the Debtor so that the Debtor could pay his ex-wife. The Debtor has never produced any loan documents to the Trustee evidencing any loans made by the Debtor's Uncle to the Debtor.

28.    In addition, the Debtor testified that he used the bank account of H&H Development to pay for his personal expenses.

29.    The Debtor had complete control over the H&H Development bank account in that he had the sole power to designate who would receive funds from that account, as well as the power to actually disburse all the funds within that account.

30.    The Uncle Transfers were deposited into a bank account in the name of the Debtor's Uncle at Eastern National Bank (a/ka the ENB Account), which was opened on March 12, 2008.

31.    The ENB Account was opened with a $1,000 deposit by the Debtor. In addition, the Debtor had signature authority and a full power of attorney over the ENB Account. The relevant ENB Account documents are attached as Composite Exhibit "C."

32.    The Debtor deposited some of his income in 2008 into the ENB Account.

33.    The Debtor did not initially disclose the ENB Account on his bankruptcy schedules, despite the fact that he had a full power of authority over that account, until after the Trustee questioned the Debtor about the ENB Account at the Debtor's Rule 2004 Examination.

### Beaufort Advisors

34.    On March 12, 2008 (the same date the ENB Account was opened), the Debtor's Uncle incorporated Beaufort Advisors in the British Virgin Islands. A copy of the incorporation papers are attached as Exhibit "D."

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00900827.DOC.}

35.      On April 4, 2008, an account at Merrill Lynch in Florida was opened for Beaufort Advisors (the *"Merrill Lynch Account"*).  Once again, the Debtor had a full power of attorney over the Merrill Lynch Account.  A copy of the relevant Merrill Lynch Account documents are attached as Composite Exhibit "E."

36.      On April 9, 2008, the Debtor's Uncle executed a Revocable Trust (the *"Trust"*) Settlement Agreement (the *"Trust Agreement"*).   The Trust Agreement documents were produced by Merrill Lynch and not the Debtor.  The Trust Agreement provides that the Debtor's Uncle is both the settler and trustee.  The Trust Agreement also provides that upon either the death of the Debtor's Uncle or the Debtor, whichever occurs first, that the Trust (after paying all expenses for the Trust) shall set apart and deliver the Trust res to the Harvey Hernandez Declaration of Trust dated April 9, 2008.  A copy of the Trust Agreement is attached as Exhibit "F."

37.      The Debtor has not produced, or listed in his bankruptcy schedules, the Harvey Hernandez Declaration of Trust dated April 9, 2008.

38.      Beaufort Advisors listed its business address in the Merrill Lynch Account opening documents at the Debtor's place of business.

39.      Thereafter, $1,100,000 was transferred from the ENB Account to the Merrill Lynch Account on May 1, 2008; and, $310,000 was transferred from the ENB Account to the Merrill Lynch Account on January 12, 2009.  A copy of the transfers are attached as Composite Exhibit "G."

40.      The Debtor did not initially disclose the Merrill Lynch Account on his bankruptcy schedules, despite the fact that he had a full power of authority over the Merrill Lynch Account.

The Debtor only disclosed the Merrill Lynch Account on his bankruptcy schedules after being questioned about it at his Rule 2004 examination.

     41.    At the Debtor's Rule 2004 Examination, which was taken on November 12, 2010, and at which time the Trustee had not yet received any documents regarding Beaufort Advisors' Merrill Lynch Account or had knowledge of the Debtor's full power of attorney and signature authority over the Merrill Lynch Account, the Trustee questioned the Debtor regarding Beaufort Advisors.  Below are portions of the Debtor's testimony:

> Q:    Do you know whether [Beaufort] is incorporated?
> A:    No idea.
> Q:    Manuel Hernandez owns that company alone?
> A:    No idea.

Hernandez 2004 Transcript at pg. 70:13-17.

> Q:    Does Beaufort Advisors have any bank accounts in the United States of America?
> A:    I'm assuming.
> Q:    Do you know –
> A:    I don't know.
> Q:    --where?
> A:    No I don't know where.

Hernandez 2004 Transcript at pgs. 72:2—73:1.

> Q:    Do you know whether Beaufort Advisors has an account at Merrill Lynch?
> A:    Yes it does.
> Q:    Excuse me?
> A:    I think it does.
> Q:    Does Beaufort have an account at Merrill Lynch?
> A:    I think it does, yes.
> Q:    Do you know if that account is still open?
> A:    I have no idea.
> Q:    Once this money went out to Beaufort Advisors, this $1,100,000, did you receive any of it from Mr. Hernandez?
> A:    No.

Hernandez 2004 Transcript at pg.149:10-23.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00900827.DOC.}

42.     On January 19, 2011, the Trustee received documents produced by Merrill Lynch regarding the Merrill Lynch Account.  These documents evidence that the Debtor had a full power of attorney over the Merrill Lynch Account, and more importantly, that the Debtor had control over the funds in the Merrill Lynch Account.  For instance, the Debtor had a Visa check card tied to the Merrill Lynch Account, which Visa check card the Debtor used between July 10, 2009 through December 31, 2010 (when the funds in the Merrill Lynch Account were virtually depleted) on every imaginable personal expense – from consistently dining at expensive restaurants to purchasing luxury goods.  Notably, the Debtor's Uncle did not have a Visa check card tied to the Merrill Lynch Account.

43.     Despite the Debtor's testimony at his Rule 2004 Examination (on November 12, 2010), he actually used his Visa check card tied to the Merrill Lynch Account during the month of November 2010 (the month of his Rule 2004 Examination).

44.     In addition, the Debtor testified that he knew Beaufort Advisors had lent some monies, but he did not know to whom.

45.     The Debtor testified at his Rule 2004 Examination as follows:

Q:     Okay.  Has Beaufort Advisors ever - - is Beaufort Advisors in the business of lending money?
A:     I know that he [Mr. Hernandez] has lent money through Beaufort, but I don't know what is the main - -
Q:     Who has he lent money to Beaufort - - who  has he lent money to through Beaufort?
A:     I don't know.  I mean, I know that he has lent money through Beaufort, but I don't know, I cannot tell you exactly to who.

Hernandez 2004 Transcript at pg. 71:7-15.

46.     The Debtor lied at his Rule 2004 Examination regarding his knowledge of Beaufort Advisors.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00900827.DOC.}

47.    The Debtor controls, and has always controlled, Beaufort Advisors and its Merrill Lynch Account in that he had the power to designate who would receive funds from that account, as well as the power to actually disburse and use all the funds within that account.

48.    The Debtor concealed his control over the Merrill Lynch Account, which control extended to the Debtor's use of funds in the Merrill Lynch Account within one year before the Petition Date.

49.    To date, the Debtor has not produced any documents or financial records of Beaufort Advisors.

**The Solution Group**

50.    The Solution Group (*"TSG"*) is owned by Raul de Varona (*"Mr. Varona"*) and Camilo Lopez (*"Mr. Lopez"*).

51.    TSG is in the business of purchasing and selling distressed properties.  TSG either creates an entity that is capitalized by investor funds and owned by such investors, which in turn purchases distressed properties that TSG consults on and manages; or, creates an entity that it owns (usually with an investor) in which the investor loans money to that entity to purchase distressed properties.

52.    Since 2009, the Debtor, through, Real Estate Advisors, Inc. (*"Real Estate Advisors"*), has allegedly been a consultant for TSG.  As payment for his consulting services, TSG pays the Debtor a salary and his health insurance, although it is not actually known how much the Debtor is paid and what benefits the Debtor receives.

53.    Real Estate Advisors is the Debtor's wholly-owned company which was incorporated on January 16, 2009, and from which date he has paid a majority, if not all, of his personal expenses.

54.     Between January 2010 and August 2010, TSG ran its payroll for its employees through Real Estate Advisors. In other words, TSG would deposit monies into Real Estate Advisor's bank account which monies would then be used to pay TSG's employees.

55.     In addition, TSG held the Debtor out as its "Chairman of the Board" on its website until the Trustee questioned the Debtor about his involvement in TSG, after which TSG's website was changed. A copy of TSG's website page stating the Debtor is its Chairman of the Board is attached as Exhibit "H."[1]

### MH Real Estate Holdings

56.     MH Real Estate Holdings is a company allegedly owned by Mr. Lopez and managed by TSG.

57.     On September 1, 2009, Beaufort Advisors allegedly made a loan to MH Real Estate Holdings in the amount of $1,750,000 (the *"Loan"*).

58.     At the time of the Loan, the Loan was the biggest investment/loan TSG or Mr. Lopez had received in furtherance of TSG's business.

59.     The Loan is evidenced by a promissory note (the *"Note"*). The Note was produced by TSG months after the Rule 2004 examinations of the Debtor and Mr. Varona, and immediately before the Rule 2004 Examination of Mr. Lopez on February 23, 2011.

60.     Mr. Lopez, the alleged signatory on the Note, testified he did not recall seeing or signing the Note, but yet knows that he "probably" did sign the Note.

61.     To date, Beaufort Advisors has transferred $1,753,894 from its Merrill Lynch Account to MH Real Estate Holdings.

---

[1] Both the Debtor and Mr. Varona testified at their respective Rule 2004 Examinations that the Debtor was not involved in any official capacity with TSG, and was merely a "consultant." Furthermore, the Debtor testified at his Rule 2004 Examination that the representation of him as Chairman of the Board of TSG was a lie.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00900827.DOC.}

62.    The alleged purpose of the Loan from Beaufort to MH Real Estate Holdings was so that MH Real Estate Holdings could purchase distressed properties in Miami-Dade and Broward counties.

63.    In fact, since September 2009, MH Real Estate Holdings has purchased over 40 properties in Miami-Dade and Broward counties (the "*MH Properties*").

64.    MH Real Estate Holdings has sold some of the MH Properties, still owns some of the MH Properties (some of which it is collecting rent from), and has transferred some of the MH Properties to related and/or affiliated entities.

65.    The Debtor manages the affairs of MH Real Estate Holdings, has held himself out to the public as the managing director of MH Real Estate Holdings, has the power to designate who gets paid from funds belonging to MH Real Estate Holdings, and according to Mr. Lopez, is the person that approves which properties MH Real Estate Holdings is going to purchase with Beaufort funds.    Attached as composite Exhibit "I" are numerous documents evidencing the Debtor's control of MH Real Estate Holdings.

66.    In effect, the Debtor controls MH Real Estate Holdings.

67.    Despite such evidence, the Debtor testified at his Rule 2004 Examination (which was taken prior to the receipt of the documents attached as Exhibit "I"):

Q:    Okay.  Have you heard of a company called MH Real Estate Holdings, LLC?
A:    Yes.
Q:    What company is that?
A:    It's a real estate company.  I mean, it's an investment company.
Q:    And who owns that?
A:    I believe it's Camilo Lopez.
Q:    Is there any – is it a coincidence that MH Real Estate Holdings, LLC, bears the initials of Manuel Hernandez?
A:    No, Manuel is a big investor in MH.
Q:    So, he is a big investor in MH Real Estate Holdings, LLC?
A:    Yes, but I don't think he owns the company though.
Q:    Okay, then why is Manuel a big investor in MH Real Estate Holdings, LLC?

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00900827.DOC.}

A:   Why?
Q:   Why?
A:   I don't know why. I mean - -
Q:   So you don't know anything about that?
A:   - - because he decided to be a big investor, I mean - -
Q:   Well, I mean - -
A:   he invested in that company, which buys and sells property.
Q:   The reason I ask you is you said you were very close with him, he's like a father
     to you.  So, I'm assuming that when he would become a big investor in any
     company, you guys would have a discussion about it.  Wanted to know why he
     decided to become an investor in MH Real Estate - -
A:   No, no, you said why he was a big investor.  He's a big investor because he
     decided to be a big investor.  He thought the business was good.
Q:   What's the business of MH Real Estate Holdings - -
A:   Buy and sell - -
Q:   LLC?
A:   - - property.  I'm sorry, I didn't let you finish.
Q:   That's fair enough.
A:   I'm sorry.
Q:   How many properties does MH Real Estate Holdings, LLC own?
A:   I have no idea.
Q:   Okay.  Did Manuel Hernandez, did he invest money in MH Real Estate Holdings,
     or did he lend money to MH Real Estate Holdings?
A:   I don't know the capacity, if it's investment or a loan.

Hernandez 2004 Transcript at pgs. 75:16 – 77:17.

68.    In addition, Mr. Lopez testified as follows:

Q:   Let's use an example.  Let's say you find a property at a foreclosure sale for
     $50,000, and you say, I think this is a good property for MH Real Estate, right?
     Are you with me so far?
A:   Yes.
Q:   You call up someone and say we want to transfer over $50,000 into MH Real
     Estate account to buy this property at a foreclosure sale, is that right?
A:   No.
Q:   Somebody has to give you authority, though, correct, to release the money?
A:   Like draws.
Q:   Exactly.
A:   Yeah.
Q:   How do you get authority to make that draw?
A:   It was pretty much through Harvey.

Lopez 2004 Transcript at pgs. 139:16 – 140:9.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00900827.DOC.}

69.    When questioned about what the Debtor's Uncle did with the Uncle Transfers, the

Debtor testified he did not know.    Specifically, the Debtor testified at his Rule 2004

Examination:

> Q:    Okay, and by the way, I skipped over it, but I'll represent that he had transferred -
> - "he" being Manuel Hernandez, the $320,000 also to Beaufort Advisors
> sometime after the transfer of the million one - - one hundred thousand dollars - -
> well, I know he did. My question to you is: When he transferred all this money to
> Beaufort Advisors, what did he do with it all?
> A:    I don't know.
> Q:    You don't know, okay, but it didn't come to you?
> A:    No.
> Q:    You did not see any of it?
> A:    No.

Hernandez 2004 Transcript at pgs. 155:14 – 156:1.

70.    Indubitably, the Debtor has been untruthful about his involvement with TSG,

Beaufort Advisors, and MH Real Estate Holdings.

71.    The Trustee has performed all conditions precedent for the bringing of this

lawsuit or such conditions have been waived by the Defendants.

## COUNT I – DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(2)(A)

72.    The Trustee reasserts the allegations set forth in paragraphs 1 through 71 as if

fully set forth herein.

73.    Within one year from the Petition Date, the Debtor transferred and/or concealed

property belonging to the Debtor with the intent to hinder, delay, or defraud his creditors or

officers of the estate.

74.    Specifically, the Debtor made the Uncle Transfers to his Uncle for no or

inadequate consideration, and continued to used the funds that constituted the Uncle Transfers up

to and after the Petition Date.

75.    The Debtor, by virtue of his use of the funds in the ENB Account and his unfettered use of the funds in the Merrill Lynch Account, coupled with his control of MH Real Estate Holdings and involvement in TSG, the retention of the benefit and use of the funds constituting the Uncle Transfers, the existence or cumulative effect of the pattern or series of transactions or course of conduct of the Debtor after the pendency or threat of suit by his creditors, and the general chronology of the events and transactions under inquiry, evidence the Debtor's actual intent to defraud under Section 727(a)(2)(A).

76.    The fact that the Debtor continued to use the funds that constituted the Uncle Transfers within one year from the Petition Date as his own constitutes continuing concealment for purposes of Section 727(a)(2)(A).

77.    Pursuant to Section 727(a)(2)(A), the Court should deny the Debtor's discharge.

WHEREFORE, the Trustee requests the entry of a judgment against the Debtor denying his discharge, awarding the costs of filing this Complaint, and for such other and further relief this Court deems fair and equitable.

### COUNT II - DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(3)

78.    The Trustee reasserts the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

79.    The Debtor has failed to keep or preserve records regarding his transactions with his Uncle, Beaufort, the Merrill Lynch Account, or the ENB Account (among others, including the Cyber Warehouse account at Charles Schwab).

80.    Such failure to keep or preserve records regarding his transactions with his Uncle, Beaufort, the Merrill Lynch Account, or the ENB Account (among others, including the Cyber

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00900827.DOC.}

Warehouse account at Charles Schwab), was not reasonable and makes it impossible to ascertain the Debtor's true financial condition or business transactions.

81.     The aforementioned records are necessary to understand the Debtor's financial condition and would shed light on what was done with the Debtor's assets and the factors which led to his Chapter 7 bankruptcy filing.

82.     The Debtor is a sophisticated businessman who has operated numerous business and real estate projects over the years. Therefore, the Debtor should have kept in his possession documents that would have evidenced what happened to the Debtor's assets prepetition and the reasons for the Debtor's numerous transfers of his property.

83.     Pursuant to Section 727(a)(3), the Court should deny the Debtor's discharge

WHEREFORE, the Trustee requests the entry of a judgment against the Debtor denying his discharge, awarding the costs of filing this Complaint, and for such other and further relief this Court deems fair and equitable.

### COUNT III - DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(4)(A)

84.     The Trustee reasserts the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

85.     The Debtor has made false oaths in this case that were both fraudulent and material.

86.     The Debtor knowingly failed to disclose the Harvey Hernandez Declaration of Trust dated April 9, 2008 and knowingly failed to disclose the Missing Accounts, and most importantly, the Merrill Lynch Account.

87.     In addition, the Debtor's Rule 2004 testimony regarding his knowledge of Beaufort Advisors and the Merrill Lynch Account was false, as evidenced by the Merrill Lynch

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00900827.DOC.}

Account statements (that were received by the Trustee from Merrill Lynch after the Debtor's Rule 2004 examination) which clearly show that the Debtor was using the Merrill Lynch Account for his own use, even during the month of his Rule 2004 examination.

88.     And finally, the Debtor's testimony regarding his involvement with TSG and MH Real Estate Holdings was false in light of the fact the Debtor controls and manages MH Real Estate Holdings.

89.     But for the Trustee's continued diligence in subpoenaing documents from various third parties and banks, the Trustee would never have discovered the transfers discussed herein and the Debtor's unfettered use of funds that were transferred by the Debtor to his Uncle.

90.     Each of the foregoing false oaths are material because they bear a relationship to the Debtor's business transactions and estate, concern the discovery of assets, and involve the Debtor's business dealings and disposition of his property.

91.     Pursuant to Section 727(a)(4)(A), the Court should deny the Debtor's discharge.

WHEREFORE, the Trustee requests the entry of a judgment against the Debtor denying his discharge, awarding the costs of filing this Complaint, and for such other and further relief this Court deems fair and equitable.

### COUNT IV - DENIAL OF DISCHARGE PURSUANT TO 11 U.S.C. § 727(a)(5)

92.     The Trustee reasserts the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

93.     The Debtor has failed to explain satisfactorily the loss of his assets or a deficiency to meet his or her liabilities.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00900827.DOC.}

94.    As evidenced by the factual allegations herein, which are all incorporated into this Count, the Debtor has not been able to satisfactorily explain with any support the Uncle Transfers other than to say he was repaying his Uncle for a personal loan made years prior.

95.    In addition, the Debtor has not satisfactorily explained his real involvement with TSG; and, the transfer and use of the significant funds, prepetition, in his Cyber Warehouse bank account at Charles Schwab.

96.    Pursuant to Section 727(a)(5), the Court should deny the Debtor's discharge

WHEREFORE, the Trustee requests the entry of a judgment against the Debtor denying his discharge, awarding the costs of filing this Complaint, and for such other and further relief this Court deems fair and equitable.

Dated: May 25, 2011.

s/ Daniel N. Gonzalez
Daniel N. Gonzalez, Esquire
Florida Bar No. 592749
dgonzalez@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Soneet Kapila, Trustee*

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/8302/8302-1/00900827.DOC.}

Page 1 of 1



| Account | C | | Routing | 067002533 |
|---|---|---|---|---|
| Amount | 320000.00 | | OF6 | 0 |
| Post Date | 20080318 | | Check | 0000000102 |
| Sequence | 0737319772 | | Tran | 000080 |



**Exhibit A**



| Account | 00000 | Routing | 067002533 |
|---------|-------|---------|-----------|
| Amount | 1100000.00 | OF6 | 0 |
| Post Date | 20080418 | Check | 0000000000 |
| Sequence | 074985849 | Tran | 000080 |

3/18/2010

**Exhibit B**

EASTERN NATIONAL BANK
799 BRICKELL PLAZA
MIAMI, FL  33131

**ACCOUNT NUMBER** ●

**ACCOUNT OWNER(S) NAME & ADDRESS**
MANUEL FELIPE HERNANDEZ SANCHEZ
CALLE SIAPURE RESIDENCIAS ACANTO
CHULAVISTA
CARACAS, VENEZUELA

**OWNERSHIP OF ACCOUNT - CONSUMER PURPOSE** (select one and initial)
☐ Single-Party Account  ☐ Multiple-Party Account
☐ Trust-Separate Agreement Dated:

**RIGHTS AT DEATH** (select one and initial)
☐ Single-Party Account
☐ Single-Party Account With Pay-on-Death Designation (name beneficiaries below)
☐ Multiple-Party Account With Right of Survivorship
☐ Multiple-Party Account With Right of Survivorship and Pay-on-Death Designation (name beneficiaries below)
☐ Multiple-Party Account Without Right of Survivorship

**NAME OR NAMES OF BENEFICIARIES:**

N/A

**OWNERSHIP OF ACCOUNT - BUSINESS PURPOSE**
☐ SOLE PROPRIETORSHIP  ☐ PARTNERSHIP
☐ CORPORATION:  ☐ FOR PROFIT  ☐ NOT FOR PROFIT
☐ LIMITED LIABILITY COMPANY

BUSINESS:
COUNTY & STATE OF ORGANIZATION:
AUTHORIZATION DATED:

| | | |
|---|---|---|
| DATE OPENED  3-12-08 | BY  009/INT'L | |
| INITIAL DEPOSIT $ 1,000.00 | ☐ CASH  ☒ Check | |

HOME TELEPHONE #  414-303-3535
BUSINESS PHONE #  212-793-7393
E-MAIL:
EMPLOYER SERVICIOS MERCADOTECNICOS MERCURIO
Name and address of someone who will always know your location:

**BACKUP WITHHOLDING CERTIFICATIONS**
NRA
TIN:
☐ TAXPAYER I.D. NUMBER - The Taxpayer Identification Number shown above (TIN) is my correct taxpayer identification number.
☒ BACKUP WITHHOLDING - I am not subject to backup withholding either because I have not been notified that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me that I am no longer subject to backup withholding.
☐ EXEMPT RECIPIENTS - I am an exempt recipient under the Internal Revenue Service Regulations.
SIGNATURE: I certify under penalties of perjury the statements checked in this section and that I am a U.S. person (including a U.S. resident alien).
X _____ W-8 BEN _____ (Date)

Exp _____ ©1992 Bankers Systems, Inc., St. Cloud, MN Form MPSC-LAZ-FL 11/21/2000

**TYPE OF ACCOUNT**
☒ NEW  ☐ EXISTING
☒ CHECKING  ☐ SAVINGS
☐ MONEY MARKET  ☐ CERTIFICATE OF DEPOSIT
☐ NOW

This is your (check one):
☒ Permanent  ☐ Temporary account agreement.

Number of signatures required for withdrawal _____
FACSIMILE SIGNATURES ALLOWED  ☐ YES  ☒ NO

N/A

**SIGNATURE(S):** The undersigned agree to the terms stated on every page of this form and acknowledge receipt of a completed copy. The undersigned further authorize the financial institution to verify credit and employment history and/or have a credit reporting agency prepare a credit report on the undersigned, as individuals. The undersigned also acknowledge the receipt of a copy and agree to the terms of the following disclosure(s):
☒ Truth in Savings  ☒ Funds Availability  ☒ Privacy
☒ Electronic Fund Transfers

(1): X _____
MANUEL F HERNANDEZ SANCHEZ
I.D. # PP#V722249  VNZLA  D.O.B. 9-14-1958
EXP. DT. 11-1-2016 (CLV#V4804112  EXP02-12)

(2): X _____
HARVEY HERNANDEZ  POA
I.D. # DL#  D.O.B. 10-9-1972

(3): X _____
I.D. #  D.O.B.

(4): X _____
I.D. #  D.O.B.

Convenience Account Agent (Single-Party Accounts Only)
X _____
I.D. #  D.O.B.

SCANNED
4-15-08

(page 1 of 2)

**Composite**

**Exhibit C**

POWER OF
ATTORNEY

I, MANUEL HERNANDEZ _____ (grantor of power), hereby constitute
and appoint HANABY HERNANDEZ _____ (grantee of power)
as my attorney-in-fact, to deposit or withdraw funds held in Account #(s)
at EASTERN NATIONAL BANK _____
799 BRICKELL PLAZA MIAMI FL 33131 (Name of Financial Institution).

**GRANTOR OF POWER: YOU MUST INDICATE BELOW WHETHER OR NOT THIS POWER OF ATTORNEY WILL BE EFFECTIVE IF YOU BECOME INCOMPETENT. MAKE A CHECK OR "X" ON THE LINE IN FRONT OF THE STATEMENT BELOW THAT EXPRESSES YOUR INTENT.**

_____ This is a durable power of attorney and it shall continue to be effective if I become incompetent. It shall not be affected by my later disability or incompetency.

_____ This power of attorney shall not be effective if I become incompetent.

**THE PARTIES SIGNING BELOW AGREE TO THE TERMS AND CONDITIONS CONTAINED ON PAGES 1 AND 2 OF THIS AGREEMENT.**

The undersigned agree to the terms and conditions contained on pages 1 and 2 of this agreement.

Signature of Grantor _____ Date 2/29/08

Signature of Grantee _____ Date 2/29/08

ACKNOWLEDGEMENT:

Signed in the presence of _____
(Signature of Financial Institution Employee)
an authorized representative of the above named Financial Institution.

**REVOCATION**

Do not use this part of the form unless there is an intent to revoke (cancel) the Power of Attorney granted above.
REVOCATION:

I hereby revoke (cancel) the herein Power of Attorney as of (date) _____

Signed (grantor of power) _____ SCANNED _____
4-15-08

Grantor signed revocation in the presence of _____, an
authorized representative of the above named Financial Institution.

NOTE: If a written revocation notice (other than the above) was received, the source was _____
_____ and was accepted by _____

NOTE: Financial Institution should file this document with the signature card of the person granting the power. Grantor and grantee of Power of Attorney may each want a copy of this document.

© 1983 BANKERS SYSTEMS, INC., ST. CLOUD, MN 56301 [1-800-397-2341] FORM POA 5/17/91                    (page 1 of 2)



Eastern National Bank

DIRECT INQUIRIES TO:
759 BRICKELL PLAZA
MIAMI, FLORIDA

33131

MANUEL F.HERNANDEZ SANCHEZ.                                                    1
CALLE SUAPURE                                                            3-16-08
RESIDENCIAS ACANTO
CHULAVISTA
CARACAS,VENEZUELA

```
*************************** ACCOUNT ACTIVITY SUMMARY ***********************
CHECKING PERSONAL                 ACCOUNT NO.
THE DATE OF LAST STATEMENT WAS                              3-12-08
YOUR PREVIOUS BALANCE ON  3-12-08 WAS                           .00
THERE WERE     1 DEPOSITS + OTHER CREDITS   A TOTAL       1,000.00  +
THERE WERE       CHECKS + OTHER DEBITS FOR A TOTAL             .00  -
A SERVICE CHARGE FEE FOR A TOTAL OF                           .00  -
YOUR NEW BALANCE AS OF  3-16-08  IS                       1,000.00
```

                    - ACCOUNT TRANSACTION DETAIL -

| CHECK (-) | CHECK (+) | DEPOSIT (+) | DATE POSTED | BALANCE |
|---|---|---|---|---|
| DEPOSIT | | 1000.00 | 3-12 | 1000.00 |

```
*************************** INTEREST SUMMARY ***************************
        INTEREST EARNED FROM  3/12/08 To  3/16/08
        DAYS IN PERIOD                                   5
        INTEREST EARNED                                .00
        INTEREST PAID THIS YEAR                        .00
        INTEREST WITHHELD THIS YEAR                    .00
```

            TO IMPROVE OUR SERVICE WE HAVE CENTRALIZED OUR
        MAILROOM. PLEASE SEND ALL ALL FEDERAL EXPRESS/DHL/UPS
        ZOOM OR COURIER SHIPMENTS TO:  EASTERN NATIONAL BANK
        ATTN:MAILROOM 799 BRICKELL PLAZA MIAMI FLORIDA 33131
ENCLOSURES
                    END OF STATEMENT
P.O. BOX 52-7869/Miami, Florida 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/Member FDIC

Page 1 of 1



 Eastern National Bank

DIRECT INQUIRIES TO:
799 BRICKELL PLAZA
MIAMI, FLORIDA

33131

MANUEL F. HERNANDEZ                                            1
1790 CORAL WAY                         3-16-08 TO  4-15-08
SUITE 100
MIAMI FLORIDA  33145

*************************** ACCOUNT ACTIVITY SUMMARY ***********************
CHECKING PERSONAL                    ACCOUNT NO.
THE DATE OF LAST STATEMENT WAS                              3-16-08
YOUR PREVIOUS BALANCE ON  3-16-08 WAS                      1,000.00
THERE WERE      1 DEPOSITS + OTHER CREDITS  A TOTAL       320,000.00  +
THERE WERE      1 CHECKS + OTHER DEBITS FOR A TOTAL           25.50  -
A SERVICE CHARGE FEE FOR A TOTAL OF                            .00  -
YOUR NEW BALANCE AS OF  4-15-08  IS                      320,974.50

                     - ACCOUNT TRANSACTION DETAIL -

------------------------------------------------------------------------
          CHECK          CHECK          DEPOSIT     DATE     BALANCE
           (-)            (+)            (+)       POSTED
------------------------------------------------------------------------
DEPOSIT                              320000.00     3-18     321000.00
          25.50  DELUXE CHECK    CHECK/ACC.        3-25     320974.50
                 MANUEL HERNANDEZ

*************************** INTEREST SUMMARY ***************************
           INTEREST EARNED FROM  3/17/08 To  4/15/08
           DAYS IN PERIOD                                       30
           INTEREST EARNED                                     .00
           INTEREST PAID THIS YEAR                             .00
           INTEREST WITHHELD THIS YEAR                         .00

                TO IMPROVE OUR SERVICE WE HAVE CENTRALIZED OUR
           MAILROOM. PLEASE SEND ALL ALL FEDERAL EXPRESS/DHL/UPS
           ZOOM OR COURIER SHIPMENTS TO:   EASTERN NATIONAL BANK
           ATTN:MAILROOM 799 BRICKELL PLAZA MIAMI FLORIDA 33131
ENCLOSURES
                             END OF STATEMENT

            P.O. BOX 52-7869/Miami, Florida 33152-7869/Member FDIC



| | |
|---|---|
| Account | 000000?? |
| Amount | 320000.00 |
| Post Date | 20080318 |
| Sequence | 073731971 |
| Routing | 067002533 |
| OF6 | 0 |
| Check | 0000000000 |
| Tran | 000010 |

| | |
|---|---|
| Account | 0000002? |
| Amount | 320000.00 |
| Post Date | 20080318 |
| Sequence | 073731972 |
| Routing | 067002533 |
| OF6 | 0 |
| Check | 0000000102 |
| Tran | 000080 |



**Eastern National Bank**

DIRECT INQUIRIES TO:
799 BRICKELL PLAZA
MIAMI, FLORIDA
                                    33131

MANUEL F. HERNANDEZ
1790 CORAL WAY                          4-15-08 TO  5-15-08      1
SUITE 100
MIAMI FLORIDA  33145

```
************************* ACCOUNT ACTIVITY SUMMARY **********************
CHECKING PERSONAL             ACCOUNT NO.
THE DATE OF LAST STATEMENT WAS                               4-15-08
YOUR PREVIOUS BALANCE ON  4-15-08 WAS                     320,974.50
THERE WERE      1 DEPOSITS + OTHER CREDITS  A TOTAL     1,100,000.00  +
THERE WERE      2 CHECKS + OTHER DEBITS FOR A TOTAL     1,100,050.00  -
A SERVICE CHARGE FEE FOR A TOTAL OF                              .00  -
YOUR NEW BALANCE AS OF  5-15-08  IS                       320,924.50
```

- ACCOUNT TRANSACTION DETAIL -

```
------------------------------------------------------------------------
          CHECK          CHECK          DEPOSIT     DATE    BALANCE
           (-)            (+)             (+)       POSTED
------------------------------------------------------------------------
DEPOSIT                               1100000.00    4-18   1420974.50
      1100000.00  OT: MERRIL LYNCH                  5-01    320974.50
          50.00  Wire Transfer Fee                  5-01    320924.50

***************************** INTEREST SUMMARY *************************
      INTEREST EARNED FROM  4/16/08 To  5/15/08
      DAYS IN PERIOD                                          30
      INTEREST EARNED                                        .00
      INTEREST PAID THIS YEAR                                .00
      INTEREST WITHHELD THIS YEAR                            .00
```

            TO IMPROVE OUR SERVICE WE HAVE CENTRALIZED OUR
      MAILROOM. PLEASE SEND ALL ALL FEDERAL EXPRESS/DHL/UPS
      ZOOM OR COURIER SHIPMENTS TO:  EASTERN NATIONAL BANK
      ATTN:MAILROOM 799 BRICKELL PLAZA MIAMI FLORIDA 33131
ENCLOSURES
                        END OF STATEMENT
            P.O. BOX 52-7868/Miami, Florida 33152-7868/Member FDIC

Page 1 of 1



| | |
|---|---|
| Account | 000000 |
| Amount | 1100000.00 |
| Post Date | 20080418 |
| Sequence | 074985848 |
| Routing | 067002533 |
| OF6 | 0 |
| Check | 0000000000 |
| Tran | 000010 |





| | |
|---|---|
| Account | 0000 |
| Amount | 1100000.00 |
| Post Date | 20080418 |
| Sequence | 074985849 |
| Routing | 067002533 |
| OF6 | 0 |
| Check | 0000000000 |
| Tran | 000080 |



 Eastern National Bank

DIRECT INQUIRIES TO:
799 BRICKELL PLAZA
MIAMI, FLORIDA
                    33131

MANUEL F. HERNANDEZ                     9                    1
1790 CORAL WAY                          12-15-08 TO  1-15-09
SUITE 100
MIAMI FLORIDA  33145

*************************** ACCOUNT ACTIVITY SUMMARY ***********************
CHECKING PERSONAL                   ACCOUNT NO.
THE DATE OF LAST STATEMENT WAS                              12-15-08
YOUR PREVIOUS BALANCE ON 12-15-08 WAS                     315,887.39
THERE WERE         DEPOSITS + OTHER CREDITS  A TOTAL             .00   +
THERE WERE       2 CHECKS + OTHER DEBITS FOR A TOTAL      310,050.00   -
A SERVICE CHARGE FEE FOR A TOTAL OF                             .00   -
YOUR NEW BALANCE AS OF  1-15-09  IS                         5,837.39

                    - ACCOUNT TRANSACTION DETAIL -

-----------------------------------------------------------------------------
        CHECK          CHECK          DEPOSIT     DATE     BALANCE
         (-)            (+)             (+)       POSTED
-----------------------------------------------------------------------------
     310000.00  OT: MERRILL LYNCH                 1-12      5887.39
         50.00  Wire Transfer Fee                 1-12      5837.39

***************************** INTEREST SUMMARY ****************************
        INTEREST EARNED FROM 12/16/08 TO  1/15/09
        DAYS IN PERIOD                                          31
        INTEREST EARNED                                        .00
        INTEREST PAID THIS YEAR                                .00
        INTEREST WITHHELD THIS YEAR                            .00

ENCLOSURES

                    END OF STATEMENT
        P.O. BOX 52-7868/Miami, Florida 33152-7868/Member FDIC



TERRITORY OF THE BRITISH VIRGIN ISLANDS
BVI BUSINESS COMPANIES ACT 2004

CERTIFICATE OF GOOD STANDING
(SECTION 235)

The REGISTRAR OF CORPORATE AFFAIRS of the British Virgin Islands HEREBY CERTIFIES
that, pursuant to the BVI Business Companies Act, 2004,

BEAUFORT ADVISORS LTD

BVI COMPANY NUMBER: 1469408

1. Is on the Register of Companies;

2. Has paid all fees, annual fees and penalties that are due and payable;

3. Has not submitted to the Registrar articles of merger or consolidation that have not become effective;

4. Has not filed articles of arrangement that have not yet become effective;

5. Is not in voluntary liquidation; and

6. No proceedings to strike the name of the company off the Register of Companies have been instituted.

REGISTRAR OF CORPORATE AFFAIRS
20th day of March 2008



TERRITORY OF THE BRITISH VIRGIN ISLANDS
BVI BUSINESS COMPANIES ACT, 2004

CERTIFICATE OF INCORPORATION
(SECTION 7)

THE REGISTRAR OF CORPORATE AFFAIRS, of the British Virgin Islands, HEREBY CERTIFIES, that pursuant to the BVI Business Companies Act, 2004, all the requirements of the Act in respect of incorporation having been complied with.

BEAUFORT ADVISORS LTD.

BVI COMPANY NUMBER: 1469498

is incorporated in the BRITISH VIRGIN ISLANDS as a BVI BUSINESS COMPANY this 12th day of March, 2008.

REGISTRAR OF CORPORATE AFFAIRS
12th day of March, 2008

## Certificate of Incumbency

NAME OF COMPANY:_____ BEAUFORT ADVISORS LTD.

INCORPORATION DATE:_____ March 12, 2008

COMPANY REGISTRATION:_____ 1469498

AUTHORIZED SHARES:_____ 50,000.00

CURRENT STATUS:_____ Good Standing

**DIRECTORS**                        **DATE OF APPOINTMENT**

Manuel Hernandez                    March 27, 2008

We, Trident Trust Company (B.V.I.) Limited, being the Registered Agent/Registered Office of the above Company, at Trident Chambers, P.O Box 146, Road Town, Tortola, British Virgin Islands, hereby certify that according to our records the above information is correct.

ROAD TOWN, TORTOLA
BRITISH VIRGIN ISLANDS

Dated the 27th day of March, 2008

.......................................................
TRIDENT TRUST COMPANY (B.V.I.) LIMITED
REGISTERED AGENT

# BIA℠ and WCMA® Account Application

Account Number (Internal Use Only)

**INSTRUCTIONS:**
Select the account, ownership and trade type you would like to establish and complete the Business Customer Information and Primary Sweep Selection. Your Merrill Lynch Financial Advisor can answer any questions you may have about your selections.

**DEFINITION:**
Margin Lending Program the Customer may obtain loans through a BIA/WCMA Account based on the value of eligible securities for the purpose of buying, trading or carrying securities for any non-securities purpose, subject to a loan for margin loans are variable and depend on spreads to the account owed to Merrill Lynch. For more information, please review your BIA Financial Service and WCMA Extended Service Account Agreement and Program Description Booklet.

**INSTRUCTIONS:**
Substitution of a completed Tax Certification Form (Appendix A) is required.

## I. BUSINESS ACCOUNT INFORMATION

### A. Account Type

☐ Business Investor Account℠ (BIA℠)

☑ Working Capital Management Account® (WCMA® )

☐ WCMA SubAccount℠ (WCMA Master Financial Service℠ – Master WCMA Account Required)

Please provide the WCMA Master Financial℠ Service (MFS) Account Number: ................................

*The account types shown are governed by the BIA Financial Service and WCMA Financial Service Account Agreement and Program Description Booklet.*

### B. Ownership Type

☑ Corporation

☐ Partnership

☐ Limited Liability Company (LLC)

☐ Sole Proprietorship

☐ Public Entity

☐ Unincorporated Organization

### C. Trade Type

☐ Cash Securities Account

☐ Margin Securities Account with the Margin Lending Program

### D. Business Customer Information

Business Name ("Customer"): __BEAUFORT  ADVISORS  Ltd__ ...........

Doing Business As (DBA Name (if application) ................................................

Taxpayer Identification Number (TIN) for Customer:

Employer Identification Number (EIN)         Social Security Number (SSN)

__0 01 00 0 0 000__  or _____

Business Telephone __(284) 494 24-34__ / __(786) 282-9009__

Business Mailing Address: Street __1790  Coral  Way  # 100__

City __Miami__ State/Province __FL__ Postal Code (zip code) __33145__ Country __USA__

Business Legal Address: Street __Wickhams  Cay 144__

City __Road Town Tatola__ State/Province _____ Postal Code (zip code) _____ Country __BVI__

Business Headquarters Address: Street _____

City _____ State/Province _____ Postal Code (zip code) _____ Country _____

Primary Business Location:

City _____ State/Province _____ Postal Code (zip code) _____ Country _____

State or Country of Incorporation/Organization __BVI__ Year of Incorporation/Organization __2008__

Tax Residency (country) __BVI__ Fiscal Year End (MM/DD/YYYY) __12/31/2008__

Primary Contact Name __Manuel  Hernandez  /Harvey Hernandez__

Contact Telephone __786-282-9009__

Additional Telephone __58-414-305-3533__

Main Business Website _____ Main Business E-mail Address _____

Page 1 : Business Account Information                                     Code 334804 0906

**Composite**

# BIA℠ and WCMA® Account Application

Account Number (Internal Use Only)

## IV. AUTHORIZED REPRESENTATIVE DESIGNATION FORM

The following Authorized Representative(s) are authorized to act on behalf of: Beaufort Advisors Ltd.
Business Name

**Authorized Representative 1:**

**INSTRUCTIONS:**
This form is for use at initial account set up only. Please complete for each Authorized Representative. Authorized Representatives must be individual and cannot. Attach additional copies if needed.

**DEFINITIONS:**
"Agreement Signer" authority includes the person on behalf of the Customer, to engage additional Services to account for the service which are governed by the BIA Financial Service and WCMA Financial Service Account Agreement and Program Description Booklet, on sell or borrow Authorized Representatives on Securities Accounts of the Customer, and to obtain or terminate Services, including margin Services, for Securities Accounts of the Customer, (for Sole Proprietorships, only Sole Sole Proprietor may have this authority.)

"Fund/Security Distribution" authority includes the power, on behalf of the Customer, to instruct the transfer to funds, securities and other assets, including but not limited to, an entire Securities Account, by wire, check or otherwise from a Securities Account of the Customer to or for the account of any other person.

"Trade" authority includes the power, on behalf of the Customer, to give instructions to Merrill Lynch to buy or sell (including short sales if the account is established within the margin lending feature) stocks, bonds, options and/or other securities, commodities and currency futures, and other property.

First Name __Manuel__  MI __E__  Last Name __Hernandez__

Authority (Please check all that apply)

☑ Agreement Signer        ☐ Check Signer
☑ Fund/Security Distribution   ☐ Cardholder (WCMA Accounts Only)
☑ Trade                 Spending Limit Amt $ _____
                   (OPTIONAL FEATURE
                   FOR CARDHOLDERS):  Spending cycle (select one): ☐ Monthly ☐ Quarterly ☐ Yearly

Title/Capacity __Director__   Social Security Number (SSN) 0 0 0 - 0 0 - 0 0 0 0

Residential Address: Street __Calle Dugues, Res Ocarte Pt# 2__

City __Caracas__   State/Province ____   Postal Code (zip code) ____   Country __Venezuela__

For clients without a SSN, please complete the following Passport information.

Passport/ID Number __4784112__  Country of Passport/ID __Venezuela__  Type of National ID __Passport__

Issue Date of ID (mm/dd/yyyy) ____   Expiration Date of ID (mm/dd/yyyy) ____

11 - 24 - 2006           11 - 20 - 2016

Type of Passport (select one): ☐ Military ☐ Diplomatic ☑ Standard

Authorized Representative Signature X __M_____   Date __4/11/08__

**Authorized Representative 2:**

First Name __Harvey__  MI ____  Last Name __Hernandez__

Authority (Please check all that apply)

☑ Agreement Signer        ☐ Check Signer
☑ Fund/Security Distribution   ☐ Cardholder (WCMA Accounts Only)
☑ Trade                 Spending Limit Amt $ _____
                   (OPTIONAL FEATURE
                   FOR CARDHOLDERS):  Spending cycle (select one): ☐ Monthly ☐ Quarterly ☐ Yearly

Title/Capacity __Reserve Attorney__   Social Security Number (SSN) 0 0 0 - 0 0 - 0 0 0 0

Residential Address: Street __2627 S. Bayshore Dr. #2202__

City __Miami__   State/Province __FL__   Postal Code (zip code) __33133__   Country __United States__

For clients without a SSN, please complete the following Passport information.

Passport/ID Number __108 18559__  Country of Passport/ID __Venezuela__  Type of National ID __Passport__

Issue Date of ID (mm/dd/yyyy) ____   Expiration Date of ID (mm/dd/yyyy) ____

11 - 04 - 1897           11 - 04 - 2024

Type of Passport (select one): ☐ Military ☐ Diplomatic ☑ Standard

Authorized Representative Signature X __H_____   Date __4/11/08__

Page 1 of 1 | Authorized Representative Designation Form

Code 325342Q0008

| Form **W-8BEN** | **Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding** | OMB No. 1545-1621 |
|---|---|---|
| (Rev. February 2006) Department of the Treasury Internal Revenue Service | ▶ Section references are to the Internal Revenue Code. ▶ See separate instructions. ▶ Give this form to the withholding agent or payer. Do not send to the IRS. | |

Do not use this form for:

- A U.S. citizen or other U.S. person, including a resident alien individual . . . . . . . . . . . . . . . . . . . . **Instead, use Form:** W-9
- A person claiming that income is effectively connected with the conduct of a trade or business in the United States . . . . . . . . . . . . . . . . W-8ECI
- A foreign partnership, a foreign simple trust, or a foreign grantor trust (see instructions for exceptions) . . . . . . W-8ECI or W-8IMY
- A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a U.S. possession that received effectively connected income or that is claiming the applicability of section(s) 115(2), 501(c), 892, 895, or 1443(b) (see instructions) . . . . . . W-8ECI or W-8EXP

Note: These entities should use Form W-8BEN if they are claiming treaty benefits or are providing the form only to claim they are a foreign person exempt from backup withholding.

- A person acting as an intermediary . . . . . . . . . . . . . . . . . . . . . . . . . . . W-8IMY

Note: See instructions for additional exceptions.

## Part I   Identification of Beneficial Owner (See instructions.)

1 Name of individual or organization that is the beneficial owner
**Beaufort Advisors LTD**

2 Country of incorporation or organization **British Virgin Islands**

3 Type of beneficial owner: ☐ Individual ☒ Corporation ☐ Disregarded entity ☐ Partnership ☐ Simple trust
☐ Grantor trust ☐ Complex trust ☐ Estate ☐ Government ☐ International organization
☐ Central bank of issue ☐ Tax-exempt organization ☐ Private foundation

4 Permanent residence address (street, apt. or suite no., or rural route). Do not use a P.O. box or in-care-of address.
**W... Rd 146**
City or town, state or province. Include postal code where appropriate. **Road Town Tortola**    Country (do not abbreviate) **British Virgin Islands**

5 Mailing address (if different from above)
**4910 Landiax, STE 100**
City or town, state or province. Include postal code where appropriate. **Fort Ocala Fl 22117**    Country (do not abbreviate) **United States**

6 U.S. taxpayer identification number, if required (see instructions) ☐ SSN or ITIN ☐ EIN   7 Foreign tax identifying number, if any (optional)

8 Reference number(s) (see instructions)

## Part II   Claim of Tax Treaty Benefits (if applicable)

9 I certify that (check all that apply):
a ☒ The beneficial owner is a resident of ____ within the meaning of the income tax treaty between the United States and that country.
b ☐ If required, the U.S. taxpayer identification number is stated on line 6 (see instructions).
c ☒ The beneficial owner is not an individual, derives the item (or items) of income for which the treaty benefits are claimed, and, if applicable, meets the requirements of the treaty provision dealing with limitation on benefits (see instructions).
d ☐ The beneficial owner is not an individual, is claiming treaty benefits for dividends received from a foreign corporation or interest from a U.S. trade or business of a foreign corporation, and meets qualified resident status (see instructions).
e ☐ The beneficial owner is related to the person obligated to pay the income within the meaning of section 267(b) or 707(b), and will file Form 8833 if the amount subject to withholding received during a calendar year exceeds, in the aggregate, $500,000.

10 Special rates and conditions (if applicable—see instructions): The beneficial owner is claiming the provisions of Article ____ of the treaty identified on line 9a above to claim a ____% rate of withholding on (specify type of income): ____
Explain the reasons the beneficial owner meets the terms of the treaty article: ____

## Part III   Notional Principal Contracts

11 ☐ I have provided or will provide a statement that identifies those notional principal contracts from which the income is not effectively connected with the conduct of a trade or business in the United States. I agree to update this statement as required.

## Part IV   Certification

Under penalties of perjury, I declare that I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:
1 I am the beneficial owner (or am authorized to sign for the beneficial owner) of all the income to which this form relates,
2 The beneficial owner is not a U.S. person,
3 The income to which this form relates is (a) not effectively connected with the conduct of a trade or business in the United States, (b) effectively connected but is not subject to tax under an income tax treaty, or (c) the partner's share of a partnership's effectively connected income, and
4 For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the instructions.
Furthermore, I authorize this form to be provided to any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner.

Sign Here ▶ ____ Signature of beneficial owner (or individual authorized to sign for beneficial owner)   Date (MM-DD-YYYY) **4/1/08**   Capacity in which acting **Director**

For Paperwork Reduction Act Notice, see separate instructions.   Cat. No. 25047Z   Form **W-8BEN** (Rev. 2-2006)

**Merrill Lynch**

## DURABLE POWER OF ATTORNEY

**(This Power of Attorney does not pertain to or provide any authority to your agent or attorney-in-fact to deal with your retirement accounts for which MLPF&S is a custodian)**

TO: Merrill Lynch, Pierce, Fenner & Smith Incorporated (MLPF&S) and, if applicable, Merrill Lynch Life Insurance Company (MLLIC) and ML Life Insurance Company of New York (MLLICNY)

RE: MLPF&S Account Number(s) _____
MLLIC Contract and/or Policy Number(s) _____
MLLICNY Contract and/or Policy Number(s) _____

NOTE: When used in this document, the words "I", "me" or "my" refer to any client/principal, whether an individual or an entity, that executes this Durable Power of Attorney.

I hereby constitute and appoint ___Harvey Hernandez___ (whose signature appears below), as my agent and attorney-in-fact, with power and authority to act for me and on my behalf in connection with my account(s) with MLPF&S and my MLLIC and MLLICNY annuity contract(s) and life insurance policy(ies), however designated, and whether presently open or hereafter opened, specifically conferring upon my agent and attorney-in-fact those powers which I have designated below by initialing the corresponding space provided to the left of each power that I wish to confer.

**PART I: If your agent and attorney-in-fact is a registered Investment Adviser, choose from the powers listed below in this Part I:**

INITIAL ONLY THOSE POWERS YOU WANT YOUR INVESTMENT ADVISER TO EXERCISE

**Initial here (Do not make a mark):**

_____ (a) (PURCHASES AND SALES) to effect purchases and sales (including short sales), to subscribe for and to trade in all types of securities and certain investments, including, but not limited to, stocks, bonds, options, limited partnership interests, trust units, physical commodities and options thereon, on margin or otherwise, provided such transactions are permissible under the terms of the account agreement governing the above-referenced MLPF&S account(s), whether such securities or investments are in negotiable form, issued or unissued, or are traded on a foreign exchange (including any foreign currency transactions necessary to effect the trade), to sell, assign, endorse and transfer all types of securities and certain investments, including, but not limited to, stocks, bonds, options, certificates of indebtedness, or certificates which evidence other securities of any nature, at any time standing in my name and to execute any documents necessary to effectuate the foregoing; to receive statements of transactions made for my account(s); to approve and confirm the same, to receive any and all notices, calls for margin, or other demands with reference to my account(s), to exercise employee stock options and to effect sales of employer stock acquired pursuant to such option exercising; and to direct payment to other broker-dealers, banks and other financial service providers for purchases or trades made at such other firms, for my account or accounts at MLPF&S, whether presently open or hereafter opened.

_____ (b) (PROXY) to receive proxy soliciting materials, annual reports and other related materials and to vote proxies on my behalf (or respond to requests for voting instructions) with respect to all securities and other assets held in my account(s) at MLPF&S. If this power is initialed, the undersigned client/principal hereby represents the following to MLPF&S: that the investment adviser designated above is registered under the Investment Advisers Act of 1940 and that such adviser exercises investment discretion over my account(s) at MLPF&S pursuant to an advisory contract.

NOTE: You may revoke this power at any time by providing MLPF&S with written notice that all proxy soliciting materials, annual reports and other related materials are to be sent directly to you and are no longer to be sent to your investment adviser.

_____ (c) (FEES) MLPF&S is hereby authorized, upon receipt of invoices or statements from the investment adviser named above, to pay such amounts in connection with the above account(s) to:

Name of Investment Adviser _____

Address of Investment Adviser _____

Code 1148 (1/02)                                    1                                    MH

in connection with the above direction, I agree that the investment adviser's fees shall be paid first (a) from free credit balances, if any, in my account(s); and second, (b) from the liquidation or withdrawal (which the client/principal hereby authorizes by his/her signature below) by MLPF&S of my shares of any money market funds or balances in my account(s) at MLPF&S. I further agree that MLPF&S shall be under no other duty or obligation to pay the investment adviser's fee, that I shall be solely responsible for verifying the accuracy or calculation of fees submitted for such payment, that the investment adviser named above has been directed to submit an invoice or statement for each payment of fees to me and to MLPF&S, stating the client's name, which MLPF&S account number the fee is to be paid from, and the amount to be paid; this authorization shall remain in full force and effect until terminated by one of the parties hereto, and that such termination shall be effective upon receipt of written notice by MLPF&S. MLPF&S may terminate this fee payment arrangement at any time.

NOTE: If this paragraph (c) (FEES) has been initialed by the client/principal, the investment adviser/agent by signing below, makes the following representations to MLPF&S: That I/we have entered into an agreement with the client/principal for investment advisory services which authorizes me/us to receive direct payment from the client's/ principal's account(s) at MLPF&S upon presentation of my/our invoice or statement to MLPF&S. I/We acknowledge and agree to all of the foregoing terms and conditions of my/our client's above authorization to MLPF&S, and I/we agree to hold MLPF&S harmless for amounts paid to me/us upon receipt of my/our invoice or statement.

_____ (d)  (DURABILITY) APPLICABLE ONLY TO U.S. RESIDENT CLIENTS (INCLUDING U.S. RESIDENT ALIENS) (INITIAL ONLY IF YOU WANT YOUR AGENT TO CONTINUE TO ACT ON YOUR ACCOUNT(S) IF YOU BECOME MENTALLY INCAPACITATED.) This durable power of attorney shall not be affected by the subsequent disability, incompetence or incapacity of the principal or by any lapse of time. (California and Maine residents see Warning or Statements below). Also, see below for additional execution requirements for durability.

NOTE: * ADDITIONAL EXECUTION REQUIREMENTS FOR DURABLE POWERS OF ATTORNEY EXIST FOR CLIENTS RESIDING IN CERTAIN STATES. THESE ADDITIONAL EXECUTION REQUIREMENTS ARE SET FORTH IN DETAIL AT THE TOP OF PAGE 6 OF THIS POWER OF ATTORNEY. IF THE CLIENT'S STATE OF RESIDENCE CHANGES AFTER THE CLIENT HAS EXECUTED THIS DURABLE POWER OF ATTORNEY, THE CLIENT SHOULD CONSULT WITH HIS OR HER OWN LEGAL COUNSEL TO DETERMINE IF THIS DURABLE POWER OF ATTORNEY SHOULD BE RE-EXECUTED.

PART II: If the agent and attorney-in-fact is not a registered Investment Adviser, choose from the powers listed below in this Part II:

INITIAL ONLY THOSE POWERS YOU WANT YOUR AGENT AND ATTORNEY-IN-FACT TO EXERCISE

initial here (Do not make a mark):

_MMX_ (a) (PURCHASES AND SALES) to effect purchases and sales (including short sales), to subscribe for and to trade in all types of securities and certain investments, including, but not limited to, stocks, bonds, options, limited partnership interests, trust units, physical commodities, and options thereon, on margin or otherwise, provided such transactions are permissible under the terms of the account agreement governing the above-referenced MLPF&S account(s), whether such securities or investments are in negotiable form, issued or unissued, or are traded on a foreign exchange (including any foreign currency transactions necessary to effect the trade), and to sell, assign, endorse and transfer all types of securities and certain investments, including but not limited to, stocks, bonds, options, certificates of indebtedness, or certificates which evidence other securities of any nature, at any time standing in my name and to execute any documents necessary to effectuate the foregoing; to receive statements of transactions made for my account(s), to approve and confirm the same, to receive any and all notices, calls for margin, or other demands with reference to my account(s), to exercise employee stock options and to effect sales of employer stock acquired pursuant to such option exercising; and to direct payment to other broker-dealers, banks and other financial service providers for purchases or trades made at such other firms, for my account or account(s) at MLPF&S, whether presently open or hereafter opened.

_MMX_ (b) (WITHDRAWAL OF FUNDS AND SECURITIES) to instruct MLPF&S to make payment of moneys and/or securities from my account(s) at MLPF&S, and to receive and direct payments therefrom payable to me or for my benefit.

_MMZ_ (c) (TRANSFERS; GIFTING AUTHORITY - TO 3rd PARTIES) to make transfers and gifts of money, stocks, bonds, options, limited partnership interests, trust units, or other securities, or any other property or investments, from my account(s) at MLPF&S or of my MLLIC or MLLICNY annuity contract(s) or life insurance policy(ies), or of loan, with-

2

drawal or surrender values of those annuity contract(s) or life insurance policy(ies), on my behalf to any third party, including, but not limited to, individuals, entities, trusts or charitable organizations, provided however, that any such gift shall not discharge an obligation of support of my agent and attorney-in-fact (such determination shall not be made by MLPF&S);

(d) (TRANSFERS; GIFTING AUTHORITY - TO AGENT) to make transfers and gifts of money, stocks, bonds, options, limited partnership interests, trust units, or other securities, or any other property or investments, from my account(s) at MLPF&S or of my MLLIC or MLLICNY annuity contract(s) or life insurance policy(ies), or of loan, withdrawal or surrender values of those annuity contract(s) or life insurance policy(ies), on my behalf to my agent and attorney-in-fact, provided however, that such gifts are for my agent and attorney-in-fact's health, education, support or maintenance (such determination shall not be made by MLPF&S);

NOTE: If you have initialed paragraph (c) or (d) in this Part II of the Power of Attorney, you have given your agent and attorney-in-fact the authority to give away your assets to third parties or to your agent and attorney-in-fact. If you do not want your agent and attorney-in-fact to have this authority, do not initial paragraph (c) or (d) of this Part II of the Power of Attorney. If there is anything about this Power of Attorney that you do not understand, you should consult your own attorney.

(e) (CHECK WRITING) to make and draw checks;

(f) (TAX DOCUMENTS) to execute tax forms related to my account(s) at MLPF&S, including, but not limited to, forms which certify my taxpayer identification number, backup withholding status, foreign status and/or tax residency;

(g) (LIFE INSURANCE POLICIES) to exercise all available ownership rights on my MLLIC and MLLICNY policy(ies), including, but not limited to, the right to cancel or exchange the policy(ies) and receive the net cash surrender value or to choose one or more income plans on canceling the policy(ies), to apply for and receive policy loans, to collaterally assign the policy(ies), to change the allocation between and among the investment divisions of the Variable Account and, if applicable, the General Account of the company in which the policy(ies) are funded, to change the beneficiary and ownership designations of the policy(ies) and to make inquiries and receive information as to the cash value and death benefit of the policy(ies);

(h) (ANNUITIES) to exercise all available ownership rights under my MLLIC or MLLICNY contract(s), including, but not limited to, the right to select or change an annuitant, the annuity date, the annuity option or the allocation between and among the available investment options, to cancel or exchange the contract(s) and receive the net value, to make withdrawals from the contract(s), to collaterally assign the contract(s), to change the beneficiary designations or ownership designations of the contract(s) and to make inquiries and receive information as to the cash value and death benefit of the contract(s);

(i) (DURABILITY) APPLICABLE ONLY TO U.S. RESIDENT CLIENTS (INCLUDING U.S. RESIDENT ALIENS) (INITIAL ONLY IF YOU WANT YOUR AGENT TO CONTINUE TO ACT ON YOUR ACCOUNT(S) IF YOU BECOME MENTALLY INCAPACITATED.) This durable power of attorney shall not be affected by the subsequent disability, incompetence or incapacity of the principal or by any lapse of time. (California and Maine residents see Warning or Statements below). Also, see below for additional execution requirements for durability.

NOTE: *ADDITIONAL EXECUTION REQUIREMENTS FOR DURABLE POWERS OF ATTORNEY EXIST FOR CLIENTS RESIDING IN CERTAIN STATES. THESE ADDITIONAL EXECUTION REQUIREMENTS ARE SET FORTH IN DETAIL AT THE TOP OF PAGE 6 OF THIS POWER OF ATTORNEY. IF THE CLIENT'S STATE OF RESIDENCE CHANGES AFTER THIS CLIENT HAS EXECUTED THIS DURABLE POWER OF ATTORNEY, THE CLIENT SHOULD CONSULT WITH HIS OR HER OWN LEGAL COUNSEL TO DETERMINE IF THIS DURABLE POWER OF ATTORNEY SHOULD BE RE-EXECUTED.

I have inquired as to whether or not my agent and attorney-in-fact is registered (or is otherwise exempt from registration) with the Securities and Exchange Commission under the Investment Advisers Act of 1940 and with the appropriate state

3

authority of my state of residence, where such registration would be required. In addition, I have investigated the business experience, qualifications and reputation of my agent and attorney-in-fact and am satisfied with the experience, qualifications and reputation of my agent and attorney-in-fact.

If I have appointed two or more agents and attorneys-in-fact, I hereby authorize them to act alone and without the consent of the other agent or agents, with respect to the powers granted above. In addition, I hereby authorize MLPF&S, MLLIC and MLLICNY to restrict my account(s), annuity contract(s) and life insurance policy(ies) from further activity in the event the agents enter conflicting or inconsistent instructions. I understand that my account(s), annuity contract(s) and life insurance policy(ies) may remain restricted until written instructions are received from me, the principal, or until joint written instructions are submitted by all of my agents.

MLPF&S, MLLIC and MLLICNY accordingly are authorized and empowered to follow the instructions of my said agent and attorney-in-fact with respect to the powers set forth and initialed above with respect to my account(s) at MLPF&S and my MLLIC and MLLICNY annuity contract(s) and life insurance policy(ies), provided such instructions and transactions are permissible under the terms of my applicable account agreement(s) with MLPF&S and my MLLIC and MLLICNY annuity contract(s) and life insurance policy(ies), and I hereby ratify and confirm any and all transactions, trades or dealings effected in and for my MLPF&S account(s) and with regard to my MLLIC and MLLICNY annuity contract(s) and life insurance policy(ies) by my agent and attorney-in-fact, and agree to indemnify MLPF&S, MLLIC and MLLICNY, their affiliates, officers, agents and employees of MLPF&S, MLLIC, MLLICNY and their affiliates and hold them free and harmless from any loss, liability, or damage by reason of any such transaction, trade or dealing, or by reason of any other matter or thing done by MLPF&S, MLLIC and MLLICNY, their affiliates, officers, agents and employees of MLPF&S, MLLIC, MLLICNY and their affiliates in and for my account(s) at MLPF&S and with regard to my MLLIC and MLLICNY annuity contract(s) and life insurance policy(ies) pursuant to instructions received from my agent and attorney-in-fact.

This power of attorney, authorization and indemnity is in addition to (and in no way limits or restricts) any and all rights which MLPF&S, MLLIC and MLLICNY may have under any other agreement or agreements between MLPF&S, MLLIC and MLLICNY and me, and shall inure and continue in favor of MLPF&S, MLLIC, and MLLICNY, their successors (by merger, consolidation or otherwise) and assigns.

This power of attorney, authorization and indemnity shall not be affected by lapse of time. It shall continue in full force and effect, and MLPF&S, MLLIC and MLLICNY, and their successors and assigns shall be indemnified in relying thereon, until MLPF&S, MLLIC and MLLICNY shall receive written notice of revocation thereof, signed by me; or in the event of the termination thereof by my death, or my mental incapacity (if I have not elected to make this power of attorney durable), until MLPF&S, MLLIC and MLLICNY shall have received actual notice thereof, and such revocation or termination shall in no way affect the validity of this power of attorney and my liability under the indemnity herein contained, with reference to any transaction initiated by my agent and attorney-in-fact, prior to the actual receipt by MLPF&S, MLLIC and MLLICNY of notice of such revocation or termination, as above provided.

To induce any transfer agent or other third party to act, I hereby agree that any transfer agent or other third party receiving a duly executed copy or facsimile of this power of attorney may act upon it, and that revocation or termination hereof shall be ineffective as to such transfer agent or other third party, unless and until actual notice or knowledge of such revocation or termination shall have been received by such transfer agent or other third party, and I for myself and for my heirs, executors, legal representatives and assigns, hereby agree to indemnify and hold harmless any such transfer agent or other third party from and against any and all claims that may arise against such transfer agent or other third party by reason of such transfer agent or third party having relied on this power of attorney.

I have read carefully the provisions of this power of attorney and understand that it authorizes my agent and attorney-in-fact, herein named, to exercise all rights and powers set forth and initialed above with respect to my account(s) with MLPF&S and my MLLIC and MLLICNY annuity contract(s) and life insurance policy(ies), and I understand that anything my agent may do in the exercise of such rights and powers is fully binding upon me.

I understand that MLPF&S, MLLIC and MLLICNY have not provided any advice that this power of attorney satisfies the requirements under the laws of the state in which it is to be effective, and if there is anything about this power of attorney that I do not understand, I should consult with my attorney for an explanation.

4

## NOTICE:

This is an important legal document. Before executing this Power of Attorney you should know these important facts:

1. Depending on the powers you have authorized for your agent and attorney-in-fact, this document may provide the person you designated as your agent and attorney-in-fact with broad powers including, but not limited to, the management, transfer, withdrawal, gifting or sale of the assets in your MLPF&S account and of your MLLIC and MLLICNY annuity contract(s) and life insurance policy(ies).
2. If you have selected durability (paragraph (d) under Part I or paragraph (i) under Part II), your agent's and attorney-in-fact's authority will continue notwithstanding your subsequent mental disability or incapacity.
3. You have the right to revoke or terminate this Power of Attorney at any time and any such revocation or termination shall be effective upon receipt of written notice by MLPF&S, MLLIC and MLLICNY.
4. If there is anything about this Power of Attorney you do not understand, you should consult with your own attorney.

Dated this ___11TH___ day of ___April___, 20_08_.

_(signature)_

Signature of Client/Principal

Title (e.g., Trustee, President, etc.) - IF APPLICABLE

WITNESSES* (one witness is always required, see below to determine if an additional witness is necessary):

(1)_____

(2)_____

### CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC
*(see below to determine if notarization is required)

STATE OF ___Florida___

COUNTY OF ___Miami-Dade___ } ss.

On this, the ___11th___ day of ___April___, 20_08_, before me, ___Enrique R. Vila___, a Notary Public in and for said County and State, personally appeared ___Manuel Hernandez___, (name of client/principal)

☑ personally known to me or ☐ proven to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and who acknowledged to me that she/he executed the same.

(SEAL)

ENRIQUE R. VILA
MY COMMISSION # DD747075
EXPIRES: April 21, 2009
Bonded Thru Notary Public

WITNESS my hand and official seal.

_(signature)_

Notary Public

----------------------------------------------------------------

I hereby represent that I am familiar with and have reviewed the investment goals, guidelines and objectives of the client; and that I will invest consistently with his or her stated goals, guidelines and objectives.

Signature of Agent _____

Agent's Social Security or Tax ID Number _____

Name of Agent's Employer, if any _____

Agent's Occupation _____

Agent's Address _____

Agent's Account Number(s), at MLPF&S, if any _____

6

**STATE SPECIFIC EXECUTION REQUIREMENTS FOR DURABLE POWERS OF ATTORNEY**

IF THE CLIENT/PRINCIPAL IS A RESIDENT OF:

ARIZONA: This power of attorney form may not be used by Arizona residents. Use the Code 1298, Arizona Durable Power of Attorney.

CALIFORNIA: This power of attorney must be notarized or witnessed by two individuals, other than the agent. Also, see attached Warning required by California Probate Code § 4128.

CONNECTICUT: This power of attorney must be witnessed by two individuals.

FLORIDA: This power of attorney must be witnessed by two individuals.

INDIANA: This power of attorney must be notarized.

MAINE: This power of attorney must be notarized.

MISSOURI: This power of attorney must be notarized.

NEW HAMPSHIRE: This power of attorney must be notarized.

NORTH CAROLINA: The client must register this power of attorney in the office of the Register of Deeds in a county within the state, in order of preference, where (1) the client/principal has legal residence, (2) the client/principal owns property, or (3) the agent resides.

TEXAS: This power of attorney does not require a witness' signature; however, it must be notarized.

SOUTH CAROLINA: This power of attorney must be witnessed by two individuals. Also, the client must record this power of attorney in the county where the client/principal resides at the time the instrument is recorded. In addition, the following probate clause must be completed by one of the above witnesses and notarized accordingly.

STATE OF SOUTH CAROLINA

COUNTY OF _____ } PROBATE

PERSONALLY appeared before me the undersigned witness who, being duly sworn, says that she/he saw the above-named Principal, sign, seal, execute, and deliver as his/her act and deed the foregoing Durable Power of Attorney for the purposes and uses herein described, and that she/he with the other witness above, at the request of the Principal and in the presence of each other, witnessed the execution thereof and subscribed their names as witnessed thereon.

_____    SWORN TO before me this _____
Witness                                                               day of _____, 20_____

                                                                          _____
                                                                          NOTARY PUBLIC FOR SOUTH CAROLINA


                                                                          My Commission Expires: _____

6

*NOTE TO ALL CALIFORNIA RESIDENTS: California law requires MLPF&S to provide this warning to you verbatim; however, certain sections of this warning may be inapplicable to this Power of Attorney. If there is anything about this Power of Attorney that you do not understand, you should consult with your own attorney.*

**FOR ALL CLIENTS WHO ARE CALIFORNIA RESIDENTS,
PLEASE READ THE FOLLOWING WARNING WHICH IS REQUIRED BY
CALIFORNIA PROBATE CODE §4128:**

A durable power of attorney is an important legal document. By signing the durable power of attorney, you are authorizing another person to act for you, the principal. Before you sign this durable power of attorney, you should know these important facts:

Your agent (attorney-in-fact) has no duty to act unless you and your agent agree otherwise in writing.

This document gives your agent the powers to manage, dispose of, sell, and convey your real and personal property, and to use your property as security if your agent borrows money on your behalf.

Your agent will have the right to receive reasonable payment for services provided under this durable power of attorney unless you provide otherwise in this power of attorney.

The powers you give your agent will continue to exist for your entire lifetime, unless you state that the durable power of attorney will last for a shorter period of time or unless you otherwise terminate the durable power of attorney. The powers you give your agent in this durable power of attorney will continue to exist even if you can no longer make your own decisions respecting the management of your property.

You can amend or change this durable power of attorney only by executing a new durable power of attorney or by executing an amendment through the same formalities as the original. You have the right to revoke or terminate this durable power of attorney at any time, so long as you are competent.

This durable power of attorney must be dated and must be acknowledged before a notary public or signed by two witnesses. If it is signed by two witnesses, they must witness either (1) the signing of the power of attorney or (2) the principal's signing or acknowledgement of his or her signature. A durable power of attorney that may affect real property should be acknowledged before a notary public so that it may easily be recorded.

You should read this durable power of attorney carefully. When effective, this durable power of attorney will give your agent the right to deal with property that you now have or might acquire in the future. The durable power of attorney is important to you. If you do not understand the durable power of attorney, or any provision of it, then you should obtain the assistance of an attorney or other qualified person.

7

This REVOCABLE TRUST SETTLEMENT AGREEMENT (the "Agreement") is made and dated April ___, 2008 by and between MANUEL HERNANDEZ, as Settlor and Trustee.

MANUEL HERNANDEZ desires to establish a revocable trust settlement for the benefit of himself and others on the terms and conditions hereinafter set forth.

MANUEL HERNANDEZ (who is hereinafter, in his individual capacity as the creator of the trust established hereby, sometimes referred to as the "Settlor") hereby transfers and distributes to the Trustee the property described in Schedule A annexed hereto and the Trustee, for himself and his successors, acknowledges receipt of that property and further agrees that he shall hold, invest, reinvest and otherwise deal with that property and such other property as may be given, bequeathed, devised and otherwise transferred to the Trustee for the purposes hereof (that property and any such additional property and the proceeds and reinvestments thereof from time to time held hereunder being herein collectively referred to as the "Trust Estate"), in trust as hereinafter provided.

The trust provided for herein during the life of MANUEL HERNANDEZ may be referred to as "The BORA TRUST SETTLEMENT" and this Agreement may, in relation to the trust or trusts from time to time held hereunder, be referred to as "The BORA REVOCABLE TRUST SETTLEMENT AGREEMENT dated April ___, 2008".

## Article I
### Trust for Settlor

During the life of the Settlor, the Trustee shall hold the Trust Estate for the benefit of the Settlor and shall pay to the Settlor so much, if any, of the net income therefrom and principal thereof, without limit as to amount, as the Settlor shall at any time request in writing or as the Trustee shall, in his absolute discretion and without any such request, allot for the Settlor's health, maintenance, education, and support. It is the Settlor's intention that all health or medical related expenses associated with the Settlor shall be paid from the trust. Any income not distributed shall be accumulated and added to principal. Following the first to occur of the death of the Settlor or the death of the Settlor's nephew, HARVEY HERNANDEZ, the Trustee shall deal with the Trust Estate as hereinafter provided.

## Article II
### Payment of Taxes and Trust Expenses

The Trustee shall pay from the Trust Estate all proper expenses of administering the Trust and all income, estate, inheritance, generation-skipping and other succession taxes, if any, attributable to the Trust Estate, including any interest and penalties relative thereto, which shall be payable by reason of the Settlor's death.

1

Exhibit F

### Article III
### Residuary Trust Estate

Following the first to occur of the death of the Settlor or the death of the Settlor's nephew, HARVEY HERNANDEZ, but in no event later than ninety (90) days after occurrence of such event, if the trust owns any shares of a corporation, the Trustee shall arrange for the transfer of such shares to the ultimate beneficiaries as stated in this Trust. The balance of the Trust Estate which remains (after making or providing for all payments which shall be required to be made under Article II of this Trust) is herein referred to as the Residuary Trust Estate. The Trustee shall set apart the Residuary Trust Estate and distribute it outright to the HARVEY HERNANDEZ DECLARATION OF TRUST dated April ___9___, 2008.

### Article IV
### Provisions for Limitation of Duration Trusts

(A)    The trusts created under this Trust shall terminate on the earlier of:

(1)    such date as the Settlor shall specify in this Trust (not being a date earlier than the date of the execution of such deed); or

(2)    the last day of the period of one hundred (100) years commencing with the date of this Trust (which number of years shall be the perpetuity period applicable to this Trust).

(B)    If at the termination of any trust created hereunder, the principal of such trust shall not have been distributed to any beneficiary hereunder, then the principal shall be distributed to the intended beneficiary in accordance with the terms of the Trust hereby created.

### Article V
### Powers of Trustee

In addition to, and without in any way limiting, any powers or authority which the Trustee would have in the absence of this Article, the Trustee is hereby authorized, from time to time and in his absolute discretion:

(A)    without regard for any law prescribing or limiting the investment powers of fiduciaries, to retain any property of any kind (including securities issued by any corporation, or any affiliate of any corporation, serving as trustee hereunder) and to invest in any property of any kind;

(B)    to sell, at public or private sale and for cash or on credit, with or without security, or to exchange, or to grant options upon, any property on any terms;

(C)    to lease any property for any term, without regard for any limitation imposed by law or for the probable duration of the administration of any trust held hereunder;

(D)    to partition or improve any property, to demolish, remodel or erect buildings or

2

other structures on any property, and to foreclose, extend, assign, release partially or discharge any lien on any property;

(E)  to borrow money from anyone (including any individual or corporation serving as Trustee hereunder) and to secure the repayment thereof by mortgage or pledge of any property;

(F)  to lend money to any beneficiary hereunder either with or without security and on such other terms as the Trustee may deem appropriate;

(G)  to settle or compromise any claim in favor or against any trust held hereunder;

(H)  to vote in person or by proxy, or to refrain from voting, in respect of any securities, and to enter into any voting trust or similar declaration;

(I)  with respect to any securities, to consent or object to any action or nonaction of any corporation, or of the directors, officers or stockholders of any corporation; and to deposit any securities under any reorganization or other declaration or with any committee, depositary, agent or trustee, and to pay fees, assessments and expenses relative thereto;

(J)  to exercise or sell any rights of subscription or other rights received in respect of any securities;

(K)  to register securities in the name of any nominee, with or without indication of the capacity in which the securities shall be held, or to hold securities in bearer form;

(L)  to employ legal counsel, accountants, investment advisers, brokers and other agents or employees, and to pay to them reasonable compensation;

(M)  notwithstanding any provisions of this Trust requiring the holding of two or more separate trust funds, to hold, manage and invest any two or more of such funds as a consolidated fund in which each separate fund shall have an appropriate undivided interest, or, if any two or more of such funds shall be held on the same terms, to combine them into a single fund;

(N)  to allocate to income account or to principal account, or in part to each, any money, stock distributions or other property received, and to charge to either of such accounts, or in part to each, any (including taxes, and interest and penalties relative thereto, and Trustee's commission) paid or loss incurred, as the Trustee shall deem equitable, having due regard for the interest of the income beneficiaries and the remaindermen, and, in particular, to determine whether, and if so, to what extent (a) premiums on securities acquired at a premium shall be amortized, (b) account shall be taken of discounts in the case of securities acquired at a discount, (c) receipts from wasting investments shall be allocated to principal account, or (d) rentals from improved real property shall be withheld as a reserve for depreciation in respect of such property;

(O)  to make payment, division or distribution of income or of principal in kind or in money or partly in each and without regard for the manner in which any other payment, division

3

or distribution may have been made, and, in the case of any division into shares, to make up the several shares of similar or of different property;

(P)     in connection with the exercise of any discretionary powers with respect to payments of income or principal to any person, either to take into account or to disregard, as the Trustee shall deem appropriate in the particular circumstances, any financial resources which may be available to such person otherwise than under the provisions of this declaration;

(Q)     to receive and accept as an addition to the principal of any trust hereunder any property which shall be acceptable to the Trustee and which shall be given, bequeathed, devised or otherwise transferred to the Trustee for the purpose of such trust;

(R)     to apply for the benefit of any person any amount, whether of income or of principal, which under any provisions hereof could be paid directly to her;

(S)     to remove from the British Virgin Islands any property at any time located in that jurisdiction and, for as long as the Trustee shall deem it advisable to do so, to keep such property, or any other property at any time comprising a part of the Trust Estate, in such place or places, whether or not within the British Virgin Islands, as the Trustee shall determine; and

(T)     generally to exercise in respect of any property any power which an absolute owner of such property would have.

## Article VI
### Other Provisions Concerning Trustee

(A)     If the Settlor shall for any reason cease to serve or shall be unable to act as a Trustee hereunder, the Settlor's daughter, _____, and _____, shall serve as successor Trustees. All decisions made by the Trustees shall be by unanimous consent unless otherwise specified in this trust.

(B)     The Settlor shall not receive compensation for his services as a Trustee hereunder. However, each other Trustee hereunder shall receive such compensation, if any, in accordance with its published schedule of fees then in effect or, if none, as shall have been provided for in a written agreement between such Trustee and either the Settlor or the other person or persons who shall have appointed such Trustee as hereinafter provided, or, in the absence of any such agreement, as shall be reasonable under the laws of the British Virgin Islands.

(C)     Additional or successor Trustees may be appointed at any time: (1) by the Settlor; or (2) if the Settlor shall not be living or able to act, by the individuals then in office as Trustee, acting unanimously; or (3) if there is no individual then in office as Trustee, by the majority of adult beneficiaries under this Trust; provided, however, that: (a) there shall not at any time following the Settlor's death be more than one corporation or more than two (2) individuals in office as Trustees of any trust; and (b) no corporation shall be eligible for appointment unless at the time of its appointment it shall have, as shown by its then most recently published financial

4

statement or report: (i) total capital funds of at least US$10,000,000; or (ii) trust and other investment assets under management of a value of at least US$100,000,000.

(D)    Any individual Trustee may resign by instrument signed and acknowledged by him or her and delivered to his or her Co-Trustees.

(E)    Any appointment of a Trustee shall be effected by instrument signed and acknowledged by the person authorized to take the action and delivered to the individual being appointed.

(F)    Any individual in office as a Trustee hereunder may at any time, by instrument signed and acknowledged by him and delivered to his Co-Trustees, delegate, or revoke the prior delegation of, any one or more of his powers or authorities as such Trustee, whether or not discretionary, to any one or more of his Co-Trustees.

(G) Any corporation which shall, by merger, consolidation, purchase or otherwise, succeed to all or substantially all of the personal trust business of any corporation then in office as a Trustee hereunder shall thereupon and without any appointment, assignment or other action by anyone succeed to office hereunder.

(H) To the full extent legally possible, each individual or corporation serving as a Trustee hereunder is hereby released from any obligation, in any jurisdiction, to furnish any bond or other security, to file any inventory, to render any annual or other periodic accounting, or to obtain the approval of any court before applying, distributing, selling or otherwise dealing with any property.

Article VII
Simultaneous Death

(A)    If there shall be insufficient evidence that the Settlor and any other individual referred to in this Trust died otherwise than simultaneously, the Settlor shall be conclusively presumed to have survived such individual.

(B)    If the individual for whose primary benefit a trust hereunder shall have been established after the Settlor's death and a remainderman of such trust shall die in such circumstances that there shall be insufficient evidence that they died otherwise than simultaneously, such individual shall, for all purposes of this Trust, be conclusively presumed to have survived such remainderman.

Article VIII
Revocation or Amendment

The Settlor reserves the right from time to time, by instrument signed and acknowledged by the Settlor and delivered to the Trustee, to revoke this Trust and the trusts created hereby, in whole or in part, or to amend any of the provisions of this Trust; provided, however, that no

5

amendment shall be effective to increase the duties, powers or responsibilities of the Trustee without the written consent of the Trustee.

### Article IX
#### Governing Law

This Agreement and the trusts created hereunder shall be governed by, and construed and enforced in accordance with, the laws of the British Virgin Islands. In accordance therewith, the Settlor expressly rejects the application of the forced heirship laws of any foreign jurisdiction. Notwithstanding anything to the contrary contained in this Agreement, in no event shall: (1) this Agreement be considered an agreement created under the laws of the United States; or (2) any of the trusts created hereunder a United States situs trust for purposes of the Internal Revenue Code of 1986, as amended.

### Article X
#### Change in Governing Law

If it appears to the Trustee, in the absolute discretion of the Trustee, that the British Virgin Island are, or may become, an unsuitable jurisdiction for the administration of this Agreement and any of the trusts created hereunder, the Trustee may change the governing law and the law of the administration of this Agreement and any of the trusts created hereunder, so long as the law or jurisdiction chosen by the Trustee will not subject this Agreement or any of the trusts created hereunder to the jurisdiction of a court within the United States.

### Article XI
#### Provisions Regarding Right to Receive Income or Principal

The right of any person to receive any amount, whether of income or of principal, pursuant to any of the provisions of this Trust, shall not, in any manner, be anticipated, alienated, assigned or encumbered and shall not be subject to any legal process or bankruptcy or insolvency proceeding or to interference or control by creditors or others.

### Article XII
#### Definitions

Wherever used in this Trust, except where the context shall clearly require otherwise:

(A)    the term "property" shall include real, personal and mixed property, tangible or intangible, of any kind and wherever located, including securities and interests in any so-called common trust funds;

(B)    the term "Trustee" shall mean at any time with relation to any trust hereunder the Trustee or Trustees of that trust then in office;

(C)    words in either the masculine or the feminine form shall be deemed to include or relate to both males and females and, where appropriate, corporations or other entities; and

6

(D)    words either in the singular or the plural number shall be deemed to include both the singular and the plural numbers.

IN WITNESS WHEREOF, the Settlor and Trustee have executed this Trust Settlement this ___ day of April, 2008.

WITNESSES:                              "SETTLOR"

_____

_____                MANUEL HERNANDEZ
(Printed name of witness)

_____

_____                "TRUSTEE"
(Printed name of witness)

_____

_____                MANUEL HERNANDEZ
(Printed name of witness)

_____

_____
(Printed name of witness)

7

Printed: 08/06/2010     14:40:17          **Transfer Search Detail**          *Page: 2*

| | | | |
|---|---|---|---|
| IMAD #: | = 20090112MMQFMP35000008 | Ref#: 090112W101719465 | Outgoing Wire | CTR/1000 |
| Account # | = 9. | MANUEL F. HERNANDEZ | | |
| Offset Acc # | = 110106 | GL WIRE TRANSFER CREDIT | | Value Dte: 01/12/2009 |
| Amount | =     310000.00 | Fee Amount:   50.00 | Charge Fee to BNF=   No | Fed Cycle: 01/12/2009 |
| Date Received/Sent | = 01/12/2009 | Time In     01121119 | IMAD =   20090112MMQFMP35000008 | |
| Date Generated | = 01/12/2009 | Auto Post   Yes | OMAD = 20090112B1B7TQ1C001743 | |
| Sender ABA | = | | Sender Ref.= | |
| Receiver ABA | = 043000261 | MELLON BANK PITTS | RFB = | |

ORG =MANUEL F. HERNANDEZ                          BNF = MERRILL LYNCH
   D   9008620906                                 D   1011730
   1790 CORAL WAY                                  UKNOWN
   SUITE 100                                       SWIFT  MELN US 3P
   MIAMI FLORIDA 33145 ,00000                      PITTSBURGH                          US

OGB =                                            IBK =

                            US

                         BBK =

                                                     US
                         OBI = REF: BEAUFORT ADVISORS LTD
                               ACCT NO

                         INS =

COMMENT

**Composite**

Exhibit G

Printed: 08/06/2010    14:40:17              **Transfer Search  Detail**              *Page: 1*

| | | | | |
|---|---|---|---|---|
| IMAD #: | = 20080501QMGFT015002980 | | Ref#: 080501W130727995 | Outgoing Wire | CTR/1000 |
| Account # | = 90 | MANUEL F. HERNANDEZ | | | |
| Offset Acc # | = 110108 | GL WIRE TRANSFER CREDIT | | | Value Dte: 05/01/2008 |
| Amount | = 1100000.00 | Fee Amount: 50.00 | Charge Fee to BNF= | No | Fed Cycle: 05/01/2008 |
| Date Received/Sent | = 05/01/2008 | Time in | IMAD = 20080501QMGFT015002980 | | |
| Date Generated | = 05/01/2008 | Auto Post    Yes | OMAD = | | |
| Sender ABA | = 067002533 | EASTERN NATL BK | Sender Ref.= | | |
| Receiver ABA | = 043000261 | MELLON BANK PITTS | RFB = | | |

ORG = MANUEL F. HERNANDEZ                      BNF = MERRIL LYNCH
    D 90                                            D  1011730
    1780 CORAL WAY                                  UNKNOWN
    SUITE 100                                       SWIFT: MELN US 3P
    MIAMI FLORIDA 33145 ,00000                      PITTSBURGH                              US

OGB =                                           IBK =


                                        US
                                            BBK =


                                                                                        US
                                            OBI = REF. BEAUFORT ADVISORS LTD
                                                  ACCT NO. ;         33
                                                  PITTSBURGH

                                            INS =


COMMENT

Language: English Español

# The Solution Group

Hello, Guest Sign In | Register Now | News | Terms & Conditions

- Home
- About Us
- Our Services
- Distressed Properties
- Market Research
- TSG Realty
- TSG Properties
- Contact Us



## About Us

## About Us

The Solution Group Corp is a vertically integrated organization which has developed and successfully implemented a Distressed Assets Program to maximize return on investment in the local South Florida market after the real estate boom.   The principals of TSG have over 50 years combined experience in real estate development and sales and have collaborated in designing a system through which distressed real estate assets are acquired at a significant discount from their highest historical value or their replacement value, and after rehabilitating the properties, sell them for significant profit to end users or investors seeking income producing real estate.

TSG's divisions include Financial Analysis, Acquisitions, Property Possession, Construction and Rehabilitation, Sales & Marketing, Leasing and Property Management.   TSG's affiliates include TSG Realty, a Florida licensed real estate broker.

## Our Team

**Harvey Hernandez**
     Chairman of the Board and Managing Director
     hhernandez@thesolutiongroup.net

**Camilo Lopez**
     President and Managing Director
     camilo@thesolutiongroup.net

**Raul J. Sanchez de Varona**
     CFO / COO – Managing Director
     raul@thesolutiongroup.net

**Luis Marin Cuadrado**
     Financial Analysit
     luis@thesolutiongroup.net

**Luis Fernando Manrique**
     Business Development Manager

http://www.thesolutiongroup.net/about/



lfmanrique@thesolutiongroup.net

**Xochitl Valdiviese**
Broker – TSG Realty
xochitl@thesolutiongroup.net

**Barbara Besu**
Acquisitions Processing
barbara@thesolutiongroup.net

**Frank Rodriguez**
Construction Manager
frank@thesolutiongroup.net

**Alfredo Haack**
Marketing Director
alfredo@thesolutiongroup.net

**Orlando Yepes**
Property Maintenance
orlando@thesolutiongroup.net

## Outside Professionals

**Mario Sariol, CPA**
Verdeja & De Armas CPAs
msariol@v-dcpa.com

**Nora Galego, Èsquire**
Galego Law Group
ngalego@galegolaw.com

**Paul C. Savage, Esquire**
Law Offices of Paul C. Savage, P.A
paul@savagelegal.com



© 2010 Copyright The Solution Group. All Rights Reserved.

- Policy
- Terms & Conditions
- Back to top

Expand
next previous
Close

Previous

0/0

Next

MBP 14



The Solution Group

July 21, 2010

Weichert Realtors, NuStar Associates
13055 SW 42 St Ste 107
Miami,.FL 33175

Re: 4470 NW 95th Terr Sunrise, FL 33351

To whom it may concern:

Please be advised that effective today I am cancelling my listing  M1391864 located at
4470 NW 95th Terr Sunrise, FL 33351.

If you have any questions feel free to contact me.

Sincerely,

Harvey Hernandez
MH Real Estate Holdings LLC

## The Solution Group Corp.
TSG Realty – MH Real Estate Holdings LLC – REF Broward LLC – TB Equity Holdings LLC – TSG Synergy Opportunities LLC –
Gamma Opportunities LLC – TSG Equity Holdings LLC – Catalpa Capital Corp. – MFHS Holdings Corp – DBFund III LLC – Caza
Investments LLC – Federal IV LLC – HAP Realty Holdings LLC – Grupo Spira Corp – LS Equity Holdings Corp
Two NE 40 Street, Suite 204, Miami, Florida 33137 * T 305 438 1258 * F 305 438 1288

**Composite**

Exhibit I



The Solution Group

## MH REAL ESTATE HOLDINGS LLC
C/O THE SOLUTION GROUP
TWO NORTHEAST 40TH STREET, SUITE #204
MIAMI, FLORIDA 33137
TELEPHONE (305) 438-1259
FAX (305)4381289
EMAIL: monika@thesolutiongroup.net

June 24, 2010

Re:

4950 E Sabal Palm Blvd No. 210
Tamarac FL 33319

. To whom it may concern:

Please be advised that we are the legal owners of the above captioned property.

We hereby authorize Linda Fiorello and/or her employees of Luxury Realty Partners to have access to our property, negotiate any rents and/or leases therein.

Should you have any questions do not hesitate to contact the undersigned.

PLEASE GOVERN YOURSELVES ACCORDINGLY.

MH Real Estate Holdings LLC

By:

Harvey Hernandez
Managing Director

The Solution Group Corp * MH Real Estate Holdings LLC * REF Broward LLC *
Catalpa Capital Corporation * TSG Synergy Opportunities LLC
Two NE 40 Street, Suite 204, Miami, Florida 33137 * T 305 438 1259 * F 305 438 1289

Property No.                    RBP1 / 36

| Address | 5550 nw 61 St No 507 Coconut Creek Fl | |
|---|---|---|
| Date of Purchase | 12/15/09 | |
| Purchase Price | $ | 26,000.00 |
| Court Fees | $ | 397.00 |
| Acquisition Fee | $ | 2,600.00 |
| Repairs | $ | 3,750.00 |
| Taxes | $ | 220.69 |
| HOA (Past Due) | $ | 4,183.96 |
| Sales Commission | $ | 600.00 |
| Doc Stamps | $ | 420.00 |
| Closing Costs | $ | 430.00 |
| Information and Research | $ | 50.00 |
| Reserves 2 Months Rent | $ | 1,700.00 |
| Other | $ | 175.00 |
| *Total Costs.* | *$* | *40,526.65* |

| Judgment Amount. | $ | 137,540.00 |
|---|---|---|
| | $ | 0.19 |

| Sales Price | $ | 60,000.00 |
|---|---|---|
| Acutal GAIN | $ | 19,473.35 |

PROJECTED GAIN $ 37,013.00

To TSG (25% of Gain)          $          4,868.34
To BA (30% of Net Gain)       $          4,381.50
To _____ (70% of Net Gain)    $         10,223.51

HH                    _____

CL                    _____

RJSdV                 _____

08 Aug. 23. 2010: 10:18AM544 178          BCHA          No. 3055   PP. 2 02/07

Residential Lease for Single Family Home or Duplex          ⌂ FloridaRealtors®

(FOR A TERM NOT TO EXCEED ONE YEAR)

A BOX (☐) OR A BLANK SPACE (___) INDICATES A PROVISION WHERE A CHOICE OR DECISION MUST BE MADE BY THE PARTIES.

THE LEASE IMPOSES IMPORTANT LEGAL OBLIGATIONS. MANY RIGHTS AND RESPONSIBILITIES OF THE PARTIES ARE GOVERNED BY CHAPTER 83, PART II, RESIDENTIAL LANDLORD AND TENANT ACT, FLORIDA STATUTES. A COPY OF THE RESIDENTIAL LANDLORD AND TENANT ACT IS ATTACHED TO THIS LEASE.

1. PARTIES. This is a lease ("the Lease") between _____ MH REAL ESTATE HOLDINGS LLC _____

(name and address of owner of the property)                                      ("Landlord") and

2 NE 40 Street Miami Fl. 33317

Eileen McFarlane

(name(s) of person(s) to whom the property is leased)

("Tenant").

Landlord's E-mail Address:          monika
                                    berman@thesolutiongroup.net

Landlord's Telephone Number:          3054381289

Tenant's E-mail Address:

Tenant's Telephone Number:          954 687 2482

2. PROPERTY RENTED. Landlord leases to Tenant the land and buildings located at    3512 NW 22 Street
                                                                                    (street address)

Lauderhill          , Florida    33137
                                  (zip code)

together with the following furniture and appliances [List all furniture and appliances. If none, write "none."] (In the Lease, the property leased, including furniture and appliances, if any, is called "the Premises"):

Washer Dryer Refrigerator Dishwasher Stove A/C Microwave Hot water heater

The Premises shall be occupied only by the Tenant and the following persons:

Eileen McFarlane and four children

3. TERM. This is a lease for a term, not to exceed twelve months, beginning on ____ August 1 2010 ____ and
                                                                                    (month, day, year)
ending    August July 31, 2011 ____ (the "Lease Term").
          (month, day, year)

4. RENT PAYMENTS, TAXES AND CHARGES. Tenant shall pay rent in the amount of $ 1,600.00 (excluding taxes) for the Lease Term. The rent shall be payable by Tenant in advance in installments or in full as provided in the options below:    1599.00

☐ In installments. If in installments, rent shall be payable

   ☐ monthly, on the _____ day of each month (if left blank, on the first day of each month) in the amount of
   $ _____ per installment.

                                    OR

   ☐ weekly, on the _____ day of each week. (If left blank, on Monday of each week.) In the amount of $ _____ per installment.

Landlord ( MM ) and Tenant ( E. M. ) acknowledge receipt of a copy of this page which is Page 1 of 7
RLHD-3   Rev. 4/10  ©2010  Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

Instanet forms

This software is licensed to [Catharina Lichtman - Luxury Realty Partners Ins] www.transactiondesk.com.

**Residential Lease for Single Family Home or Duplex**                    ☼☼ FloridaRealtors™

## (FOR A TERM NOT TO EXCEED ONE YEAR)

A BOX (☐) OR A BLANK SPACE (____) INDICATES A PROVISION WHERE A CHOICE OR DECISION MUST BE MADE BY THE PARTIES.

THE LEASE IMPOSES IMPORTANT LEGAL OBLIGATIONS. MANY RIGHTS AND RESPONSIBILITIES OF THE PARTIES ARE GOVERNED BY CHAPTER 83, PART II, RESIDENTIAL LANDLORD AND TENANT ACT, FLORIDA STATUTES. A COPY OF THE RESIDENTIAL LANDLORD AND TENANT ACT IS ATTACHED TO THIS LEASE.

1. PARTIES. This is a lease ("the Lease") between ___MH REAL ESTATE HOLDINGS LLC___
(name and address of owner of the property)

___2 NE 40 Street Miami Fl. 33317___ ("Landlord") and

___Eileen McFarlane___
(name(s) of person(s) to whom the property is leased) ("Tenant").

Landlord's E-mail Address: ___monika___ ~~Barbara~~@thesolutiongroup.net

Landlord's Telephone Number: ___3054381289___

Tenant's E-mail Address: _____

Tenant's Telephone Number: ___954 687 2482___

2. PROPERTY RENTED. Landlord leases to Tenant the land and buildings located at ___5512 NW 22 Street___
(street address)

___Lauderhill___, Florida ___33137___
(zip code)

together with the following furniture and appliances [List all furniture and appliances. If none, write "none."] (In the Lease, the property leased, including furniture and appliances, if any, is called "the Premises"):
Washer Dryer Refrigerator Dishwasher Stove A/C Microwave Hot water heater

The Premises shall be occupied only by the Tenant and the following persons:
Eileen McFarlane and four children

[INITIAL HERE]

3. TERM. This is a lease for a term, not to exceed twelve months, beginning on ___August 1 2010___ and
(month, day, year)
ending ___August ~~July~~ 31, 2011___ (the "Lease Term").
(month, day, year)

[INITIAL HERE]

4. RENT PAYMENTS, TAXES AND CHARGES. Tenant shall pay rent in the amount of $ ___1599.00___ ~~1,600.00~~ (excluding taxes) for the Lease Term. The rent shall be payable by Tenant in advance in installments or in full as provided in the options below:

☐ in installments. If in installments, rent shall be payable

   ☐ monthly, on the _____ day of each month (if left blank, on the first day of each month) in the amount of

   $_____ per installment.                    OR

   ☐ weekly, on the _____ day of each week. (if left blank, on Monday of each week.) in the amount of $_____ per installment.

Landlord ( ✗ )( ___ ) and Tenant ( ℓ )( M ) acknowledge receipt of a copy of this page which is Page 1 of 7
RLHD-3    Rev. 4/10   ©2010  Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

Instan☼t forms

This software is licensed to [Catherine Lichtman -  Luxury Realty Partners Inc] www.transactiondesk.com.

88Aug. 23. 2010.:10:18AM449-178    BCHA    ── No. 3055 P/P. 3 03/07

☐ in full on _____ In the amount of $_____
(date)

Tenant shall also be obligated to pay taxes on the rent when applicable in the amount of $_____ ☐ with each rent installment

☐ with the rent for the full term of the Lease. Landlord will notify Tenant if the amount of the tax changes.

**Payment Summary**

☐ If rent is paid in installments, the total payment per installment including taxes shall be in the amount of $_____

☐ If rent is paid in full, the total payment including taxes shall be in the amount of $_____

All rent payments shall be payable to _____ MR REAL ESTATE HOLDINGS LLC _____ at
(name)    (if left blank, to Landlord at Landlord's address.)

_____ 2 NW 40 STREET #204 Miami FL. 33137 _____
(address)

☐ If the tenancy starts on a day other than the first day of the month or week as designated above, the rent shall be prorated from

_____    through _____    In the amount of $_____ and shall be due
(date)    (date)

on _____ . (If rent paid monthly, prorate on a 30-day month.)
(date)

Tenant shall make rent payments required under the Lease by (choose all applicable) ☐ cash. ☐ personal check, ☐money order, ☐ cashier's check, or ☐ other _____ (specify). If the payment is accepted by any means other than cash, payment is not considered made until the other instrument is collected.

If Tenant makes a rent payment with a worthless check, Landlord can require Tenant ☐ to pay all future payments by ☐ money order, ☐ cashier's check, or ☐ official bank check or ☐ cash or other (specify) _____ and ☐ to pay bad check fees in the amount of $_____ (not to exceed the amount provided by Section 68.065, Florida Statutes). *1599.00*

**5. MONEY DUE PRIOR TO OCCUPANCY.** Tenant shall pay the sum of $ ~~1,600.00~~ in accordance with this paragraph prior to occupying the Premises. Tenant shall not be entitled to move in or to keys to the Premises until all money due prior to occupancy has been paid. If no date is specified below, then funds shall be due prior to Tenant occupancy. Any funds designated in this paragraph due after occupancy, shall be paid accordingly. Any funds due under this paragraph shall be payable to Landlord at Landlord's address or

to _____    _____
(name)

at _____    *1599.00*
(address)

| | | | |
|---|---|---|---|
| First ☑ month's ☐ week's rent plus applicable taxes | $ ~~1,600.00~~ | due | August 1, 2010 |
| Prorated rent plus applicable taxes | $ _____ | due | _____ |
| Advance rent for ☐ month ☐ week of _____ plus applicable taxes | $ _____ | due | _____ |
| Last ☐ month's ☐ week's rent plus applicable taxes | $ _____ | due | _____ |
| Security deposit | $ 1,600.00 | due | August 1, 2010 |
| Additional security deposit | $ _____ | due | _____ |
| Security deposit for homeowner's association | $ _____ | due | _____ |
| Pet Deposit | $ _____ | due | _____ |
| Other _____ | $ _____ | due | _____ |
| Other _____ | $ _____ | due | _____ |

Landlord (_____) and Tenant (_C_ | _M_) acknowledge receipt of a copy of this page which is Page 2 of 7
RLHD-3    Rev. 4/10 ©2010   Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

*InstanQt forms*

This software is licensed to [Catharina Lichtman - Luxury Realty Partners Inc] www.transactiondesk.com.

☐ in full on _____ in the amount of $_____.
(date)

Tenant shall also be obligated to pay taxes on the rent when applicable in the amount of $_____ ☐ with each rent installment

☐ with the rent for the full term of the Lease. Landlord will notify Tenant if the amount of the tax changes.

**Payment Summary**

☐ If rent is paid in installments, the total payment per installment including taxes shall be in the amount of $_____.

☐ If rent is paid in full, the total payment including taxes shall be in the amount of $_____.

All rent payments shall be payable to _____ MH REAL ESTATE HOLDINGS LLC _____ at
(name)
_____ 2 NW 40 STREET #204 Miami Fl. 33137 _____, (if left blank, to Landlord at Landlord's address.)
(address)

☐ If the tenancy starts on a day other than the first day of the month or week as designated above, the rent shall be prorated from

_____ through _____ in the amount of $_____ and shall be due
(date)                                    (date)

on _____. (if rent paid monthly, prorate on a 30-day month.)
(date)

Tenant shall make rent payments required under the Lease by (choose all applicable) ☐ cash, ☐ personal check, ☐money order,
☐ cashier's check, or ☐ other _____ (specify). If the payment is accepted by any
means other than cash, payment is not considered made until the other instrument is collected.

If Tenant makes a rent payment with a worthless check, Landlord can require Tenant ☐ to pay all future payments by ☐ money
order, ☐ cashier's check, or official bank check or ☐ cash or other (specify) _____
and ☐ to pay bad check fees in the amount of $_____ (not to exceed the amount prescribed by Section 68.065, Florida
Statutes).                                                           *1599.00*

5. **MONEY DUE PRIOR TO OCCUPANCY.** Tenant shall pay the sum of $ ~~1,600.00~~ in accordance with this paragraph prior to
occupying the Premises. Tenant shall not be entitled to move in or to keys to the Premises until all money due prior to occupancy has
been paid. If no date is specified below, then funds shall be due prior to Tenant occupancy. Any funds designated in this paragraph due
after occupancy, shall be paid accordingly. Any funds due under this paragraph shall be payable to Landlord at Landlord's address or

to _____
(name)

at _____
(address) *1599.00*

| | | | |
|---|---|---|---|
| First ☑ month's ☐ week's rent plus applicable taxes | $ ~~1,600.00~~ | due | August 1, 2010 |
| Prorated rent plus applicable taxes | $ _____ | due | _____ |
| Advance rent for ☐ month ☐ week of | | | |
| _____ plus applicable taxes | $ _____ | due | _____ |
| Last ☐ month's ☐ week's rent plus applicable taxes | $ _____ | due | _____ |
| Security deposit | $ 1,600.00 | due | August 1, 2010 |
| Additional security deposit | $ _____ | due | _____ |
| Security deposit for homeowner's association | $ _____ | due | _____ |
| Pet Deposit | $ _____ | due | _____ |
| Other_____ | $ _____ | due | _____ |
| Other_____ | $ _____ | due | _____ |

Landlord (  ) (  ) and Tenant (  ) (  ) acknowledge receipt of a copy of this page which is Page 2 of 7
RLHD-3   Rev. 4/10 ©2010  Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

This software is licensed to [Catherine Lichtman - Luxury Realty Partners Inc] www.transactiondesk.com.

Instanet
forms

6. **LATE FEES.** (Complete if applicable) In addition to rent, Tenant shall pay a late charge in the amount of $ ___50.00___ (If left blank, 4% of the rent payment) for each rent payment made ___10___ days after the day it is due (if left blank, 5 days if rent is paid monthly, 1 day if rent is paid weekly).

7. **PETS AND SMOKING.** Unless this box ☐ is checked or a pet deposit is paid, Tenant may not keep pets or animals on the Premises. If Tenant may keep pets, the pets described in this paragraph are permitted on the Premises.

_____
(Specify number of pets, type(s), breed, maximum adult weight of pets.)

Unless this box ☐ is checked, no smoking is permitted in the Premises.

8. **NOTICES.** _____ is Landlord's Agent. All notices must be sent to

☑ Landlord _____MH REAL ESTATE HOLDINGS LLC_____ at ___2 NE 40 Street Miami Fl. 33137___

☐ Landlord's Agent _____ at _____

unless Landlord gives Tenant written notice of a change. All notices of such names and addresses or changes thereto shall be delivered to the Tenant's residence or, if specified in writing by the Tenant, to any other address. All notices to the Landlord or the Landlord's Agent (whichever is specified above) shall be given by U.S. mail or by hand delivery.

Any notice to Tenant shall be given by U.S. mail or delivered to Tenant at the Premises. If Tenant is absent from the Premises, a notice to Tenant may be given by leaving a copy of the notice at Premises.

9. **UTILITIES.** Tenant shall pay for all utilities services during the Lease Term and connection charges and deposits for activating existing utility connections to the Premises except for _____, that Landlord agrees to provide at Landlord's expense (if blank, then "NONE").

10. **MAINTENANCE.** Landlord shall be responsible for compliance with Section 83.51, Florida Statutes, and shall be responsible for maintenance and repair of the Premises, unless otherwise stated below: (Fill in each blank space with "Landlord" for Landlord or "Tenant" for Tenant, if left blank, Landlord will be responsible for the item):

| | | | |
|---|---|---|---|
| L roofs | L windows | ___ screens | ___ steps |
| L doors | L floors | ___ porches | ___ exterior walls |
| L foundations | L plumbing | ___ structural components | |
| L heating | L hot water | ___ running water | ___ locks and keys |
| L electrical system | | ___ cooling | ___ smoke detection devices |
| L garbage removal/ outside receptacles | | | |
| L extermination of rats, mice, roaches, ants and bedbugs | | | |
| L extermination of wood-destroying organisms | | | |
| L lawn /shrubbery | N/A pool/spa/hot tub | | |
| N/A water treatment | T filters (specify) | _____ | |
| L ceilings | L interior walls | | |
| ___ Other (specify) | LANDLORD SHALL SUPPLY A/C UNIT IN WORKING CONDITION | | |

Tenant shall notify _____ at _____ (If left blank, Landlord at
                              (name)                          (address)

Landlord's address) and _____ of maintenance and repair requests.
                              (telephone number)

11. **ASSIGNMENT.** Unless this box ☐ is checked, Tenant may not assign the Lease or sublease all or any part of the Premises without first obtaining the Landlord's written approval and consent to the assignment or sublease.

12. **KEYS AND LOCKS.** Landlord shall furnish Tenant

___1___ # of sets of keys to the dwelling
___0___ # of mail box keys
___0___ # of garage door openers

Landlord ( ___ ) and Tenant ( ___ ) acknowledge receipt of a copy of this page which is Page 3 of 7
RLHD-3    Rev. 4/10  ©2010  Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

This software is licensed to [Catherine Lichtman - Luxury Realty Partners Inc] www.transactiondesk.com.

If there is a homeowner's association, Tenant will be provided with the following to access the association's common areas/facilities:

_____ # of keys to _____
_____ # of remote controls to _____
_____ # of electronic cards to _____
_____                            other (specify) to _____

At end of Lease Term, all items specified in this paragraph shall be returned to _____ (name)
_____ (If left blank, Landlord at Landlord's address).
at _____
                          (address)

13. **LEAD-BASED PAINT.** ☐ Check and complete if the dwelling was built before January 1, 1978. Lead Warning Statement (when used in this article, the term Lessor refers to Landlord and the term Lessee refers to Tenant).

Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

**Lessor's Disclosure (initial)**

_____ (a) Presence of lead-based paint or lead-based paint hazards (check (i) or (ii) below).
                          (i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).


                          (ii) _____ Lessor has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
_____ (b) Records and reports available to the Lessor (check (i) or (ii) below):
                          (i) _____ Lessor has provided the Lessee with all available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list documents below).


                          (ii) _____ Lessor has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**Lessee's Acknowledgment (initial)**

_____ (c) Lessee has received copies of all information listed above.
_____ (d) Lessee has received the pamphlet *Protect Your Family From Lead in Your Home*.

**Agent's Acknowledgment (initial)**

_____ (e) Agent has informed the Lessor of the Lessor's obligations under 42 U.S.C. 4852d and is aware of his/her responsibility to ensure compliance.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| | | |
|---|---|---|
| Lessor's signature _____ Date | Lessor's signature _____ | Date _____ |
| *Eileen McFarlane* 10-26-10 | | |
| Lessee's signature _____ Date | Lessee's signature _____ | Date _____ |
| _____ 6-26-10 | | |
| Agent's signature _____ Date | Agent's signature _____ | Date _____ |

14. **SERVICEMEMBER.** If Tenant is a member of the United States Armed Forces on active duty or state active duty or a member of the Florida National Guard or United States Reserve Forces, the Tenant has rights to terminate the Lease as provided in Section 83.682, Florida Statutes, the provisions of which can be found in the attachment to this Lease.

Landlord ( ___ ) ( ___ ) and Tenant ( ___ ) ( ___ ) acknowledge receipt of a copy of this page which is Page 4 of 7
RLHD-3   Rev.4/10   ©2010   Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

*instanet forms*

15. **LANDLORD'S ACCESS TO THE PREMISES.** Landlord's Agent may enter the Premises in the following circumstances:

    A. At any time for the protection or preservation of the Premises.
    B. After reasonable notice to Tenant at reasonable times for the purpose of repairing the Premises.
    C. To inspect the Premises; make necessary or agreed-upon repairs, decorations, alterations, or improvements; supply agreed services; or exhibit the Premises to prospective or actual purchasers, mortgagees, tenants, workers, or contractors under any of the following circumstances:
        (1) with Tenant's consent;
        (2) in case of emergency;
        (3) when Tenant unreasonably withholds consent; or
        (4) if Tenant is absent from the Premises for a period of at least one-half a rental installment period. (If the rent is current and Tenant notifies Landlord of an intended absence, then Landlord may enter only with Tenant's consent or for the protection or preservation of the Premises.)

16. **HOMEOWNER'S ASSOCIATION. IF TENANT MUST BE APPROVED BY A HOMEOWNER'S ASSOCIATION** ("ASSOCIATION"), LANDLORD AND TENANT AGREE THAT THE LEASE IS CONTINGENT UPON RECEIVING APPROVAL FROM THE ASSOCIATION. ANY APPLICATION FEE REQUIRED BY AN ASSOCIATION SHALL BE PAID BY ☐ LANDLORD ☐ TENANT. IF SUCH APPROVAL IS NOT OBTAINED PRIOR TO COMMENCEMENT OF LEASE TERM, EITHER PARTY MAY TERMINATE THE LEASE BY WRITTEN NOTICE TO THE OTHER GIVEN AT ANY TIME PRIOR TO APPROVAL BY THE ASSOCIATION, AND IF THE LEASE IS TERMINATED, TENANT SHALL RECEIVE RETURN OF DEPOSITS SPECIFIED IN ARTICLE 5, IF MADE. If the Lease is not terminated, rent shall abate until the approval is obtained from the association. Tenant agrees to use due diligence in applying for association approval and to comply with the requirements for obtaining approval. ☐ Landlord ☐ Tenant shall pay the security deposit required by the association, if applicable.

17. **USE OF THE PREMISES.** Tenant shall use the Premises for residential purposes. Tenant shall have exclusive use and right of possession to the dwelling. The Premises shall be used so as to comply with all state, county, municipal laws and ordinances, and all covenants and restrictions affecting the Premises and all rules and regulations of homeowners' associations affecting the Premises. Tenant may not paint or make any alterations or improvements to the Premises without first obtaining the Landlord's written consent to the alteration or improvement.  However, unless this box ☐ is checked, Tenant may hang pictures and install window treatments in the Premises without Landlord's consent, provided Tenant removes all such items before the end of the Lease Term and repairs all damage resulting from the removal. Any improvements or alterations to the Premises made by the Tenant shall become Landlord's property. Tenant agrees not to use, keep, or store on the Premises any dangerous, explosive, toxic material which would increase the probability of fire or which would increase the cost of insuring the Premises.

18. **RISK OF LOSS/INSURANCE.**
    A. Landlord and Tenant shall each be responsible for loss, damage, or injury caused by its own negligence or willful conduct.
    B. Tenant should carry insurance covering Tenant's personal property and Tenant's liability insurance.

19. **PROHIBITED ACTS BY LANDLORD.** Landlord is prohibited from taking certain actions as described in Section 83.67, Florida Statutes, the provisions of which can be found in the attachment to this Lease.

20. **CASUALTY DAMAGE.** If the Premises are damaged or destroyed other than  by wrongful or negligent acts of Tenant or persons on the Premises with Tenant's consent, so that the use of the Premises is substantially impaired, Tenant may terminate the Lease within 30 days after the damage or destruction and Tenant will immediately vacate the Premises. If Tenant vacates, Tenant is not liable for rent that would have been due after the date of termination. Tenant may vacate the part of the Premises rendered unusable by the damage or destruction, in which case Tenant's liability for rent shall be reduced by the fair rental value of the part of the Premises that was damaged or destroyed.

21. **DEFAULTS/REMEDIES.** Should a party to the Lease fail to fulfill their responsibilities under the Lease or need to determine whether there has been a default of the Lease, refer to Part II, Chapter 83, entitled Florida Residential Landlord and Tenant Act which contains information on defaults and remedies.  A copy of the current version of this Act is attached to the Lease.

22. **SUBORDINATION.** The Lease is automatically subordinate  to the lien  of any mortgage encumbering the fee title to the Premises. from time to time.

23. **LIENS. THE  INTEREST OF THE LANDLORD SHALL NOT BE SUBJECT TO LIENS FOR IMPROVEMENTS MADE BY THE TENANT AS PROVIDED IN SECTION 713.10, FLORIDA STATUTES.** Tenant shall notify all parties performing work on the Premises at Tenant's request that the Lease does not allow any liens to attach to Landlord's interest.

24. **RENEWAL/EXTENSION.** The Lease can be renewed or extended only be a written agreement signed by both Landlord and Tenant, but the term of a renewal or extension together with the original Lease Term may not exceed one year. A new lease is required for each year.

25. **TENANT'S TELEPHONE NUMBER.** Tenant shall, within 5 business days of obtaining telephone services at the Premises, send written notice to Landlord of Tenant's telephone numbers at the Premises.

26. **ATTORNEYS' FEES.** In any lawsuit brought to enforce the Lease or under applicable law, the party in whose favor a judgment or decree has been rendered may recover reasonable court costs, including attorneys' fees, from the non-prevailing party.

Landlord ( ✓ ) (   ) and Tenant ( E.H ) (   ) acknowledge receipt of a copy of this page which is Page 5 of 7
RLHD-3   Rev. 4/10   ©2010   Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

Insta
form

**27. MISCELLANEOUS.**
A. Time is of the essence of the performance of each party's obligations under the Lease.
B. The Lease shall be binding upon and for the benefit of the heirs, personal representatives, successors, and permitted assigns of Landlord and Tenant, subject to the requirements specifically mentioned in the Lease. Whenever used, the singular number shall include the plural or singular and the use of any gender shall include all appropriate genders.
C. The agreements contained in the Lease set forth the complete understanding of the parties and may not be changed or terminated orally.
D. No agreement to accept surrender of the Premises from Tenant will be valid unless in writing and signed by Landlord.
E. All questions concerning the meaning, execution, construction, effect, validity, and enforcement of the Lease shall be determined pursuant to the laws of Florida.
F. A facsimile copy of the Lease and any signatures hereon shall be considered for all purposes originals.
G. As required by law, Landlord makes the following disclosure: "RADON GAS." Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county health department.

**28. BROKERS' COMMISSION.** ☐ Check and complete if applicable. The brokerage companies named below will be paid the commission set forth in this paragraph by ☐ Landlord ☐ Tenant for procuring a tenant for this transaction.

| CECELIA JACKSON | Catherine  Lichtman |
|---|---|
| Real Estate Licensee | Real Estate Licensee |
| CJAX N CO REALTY | Luxury Realty Partners Inc |
| Real Estate Brokerage Company | Real Estate Brokerage Company |
| | |
| Commission | Commission |

**29. TENANT'S PERSONAL PROPERTY.** TENANT MUST INITIAL IN THIS BOX ☐ FOR THE FOLLOWING PROVISION TO APPLY. BY SIGNING THIS RENTAL AGREEMENT, THE TENANT AGREES THAT UPON SURRENDER, ABANDONMENT, OR RECOVERY OF POSSESSION OF THE DWELLING UNIT DUE TO THE DEATH OF THE LAST REMAINING TENANT, AS PROVIDED BY CHAPTER 83, FLORIDA STATUTES, THE LANDLORD SHALL NOT BE LIABLE OR RESPONSIBLE FOR STORAGE OR DISPOSITION OF THE TENANT'S PERSONAL PROPERTY.

The Lease has been executed by the parties on the dates indicated below.

_____          _____
Landlord's Signature                                        Date

_____          _____
Landlord's Signature                                        Date

_____          _____
Landlord's Signature                                        Date

*Eileen McFarlane*          _____
Tenant's Signature                                          Date
Eileen McFarlane

_____          _____
Tenant's Signature                                          Date

This form was completed with the assistance of:

Name of Individual:          CECELIA JACKSON
Name of Business:          _____
Address:          _____
Telephone Number:          _____

Landlord ( MM ) and Tenant ( EM ) (     ) acknowledge receipt of a copy of this page which is Page 6 of 7
RLHD-3    Rev. 4/10    ©2010    Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

*Insta form*

### Early Termination Fee/Liquidated Damages Addendum

[    ] I agree, as provided in the rental agreement, to pay $ _____ (an amount that does not exceed two months' rent) as liquidated damages or an early termination fee if I elect to terminate the rental agreement and the landlord waives the right to seek additional rent beyond the month in which the landlord retakes possession.

[ X ] I do not agree to liquidated damages or an early termination fee, and I acknowledge that the landlord may seek damages as provided by law.

_____     __7_|_8_|_10_____
Landlord's Signature                                       Date

_____     _____
Landlord's Signature                                       Date

_____     _____
Landlord's Signature                                       Date

_Eileen McFarlane_____     _____
Tenant's Signature  Eileen McFarlane                       Date

_____     _____
Tenant's Signature                                         Date

Landlord (   /   ) and Tenant ( E-M ) (    ) acknowledge receipt of a copy of this page which is Page 7 of 7
RLHD-3   Rev. 4/10   ©2010   Approved for use under rule 10-2.1(a) of The Rules Regulating the Florida Bar

Luxury Realty Partners Inc] www.transactiondesk.com.

instan
forms

**Barbara Besu**

| To: | Harvey Hernandez (TSG) |
|---|---|
| Cc: | Frank Rodriguez |
| Subject: | RE: Skyloft NDP29 |

Good Morning, Boss,

I spoke w/ Bob this morning.  He gave me an entry code for gate:0417.  This will give you access through the whole property.  He will have his maintenance guy, Alex, call me, because he has a master key.

In the meantime I will fax him copy of the Certificate of Title and contact their attorneys for the HOAs'.

Barbara Besu

-----Original Message-----
From: Harvey Hernandez (TSG) [mailto:hhernandez@thesolutiongroup.net]
Sent: Tuesday, June 08, 2010 9:03 AM
To: Barbara
Subject: Skyloft

Good morning Barbara, here's the info for the person in charge of management for skyloft. Please call him asap and get a pay off of HOA.

Mor management. Bob 561 2760248.

Thx.

Harvey Hernandez
2 NE 40 Street
Suite 204
Miami, FL 33137
T: (305) 438-1259
F: (305) 675-2837

1

## Barbara Besu

From:           Harvey Hernandez (TSG) [hhernandez@thesolutiongroup.net]
Sent:           Tuesday, June 08, 2010 9:03 AM
To:             Barbara
Subject:        Skyloft

Good morning Barbara, here's the info for the person in charge of management for skyloft.
Please call him asap and get a pay off of HOA.

Mor management. Bob 561 2760248.  ~704 & 561 -265-0450

Thx.

Harvey Hernandez
2 NE 40 Street
Suite 204
Miami, FL 33137
T: (305) 438-1259
F: (305) 675-2837

1

**Monika Pfeiffer**

To:
Subject:       Harvey Hernandez (TSG); raul@thesolutiongroup.net; 'Linda Fiorello'; Joseph Fiorello
               RE: LAkes of carriage hills  MBP 56

Raul and Harvey:

The previous owner is still living the property she seems very difficult and not someone we
would want in one of our properties, she doesn't even have electricity in the property
because of lack of payment and the association said she is a troublemaker, so Joe is going to
start working on getting her out ASAP.

This community doesn't allow rentals, but Linda was over at the association talked to them
and they will make an exception and allow us to rent.


Monika S. Pfeiffer The Solution Group Corp | Coordinator Broward Aquisitions | Two NE 40
Street, Suite 204 | Miami, Florida 33137 | T 305 438 1259 | C 786 942 2363 | F 305 438 1289
| monika@thesolutiongroup.net | www.thesolutiongroup.net


The information contained in this email message is privileged and confidential intended only
for the use of the individual(s) named above. If the reader of this message is not the
intended recipient, you are hereby notified that any dissemination, distribution or copy of
this communication is strictly prohibited. If you have received this communication in error,
please contact the sender by reply E-mail and destroy all copies of the original message.
Thank you.

La información contenida en este correo electrónico es privilegiada y confidencial. Esta
información solo está destinada para el uso de las personas a las cuales va dirigido.    Si
Ud. no es una de estas personas, le participamos que está prohibido cualquier diseminación o
distribución de esta comunicación.    Si ha recibido este correo en error, le rogamos por
favor se lo comunique a la persona que se lo mando por correo electrónico y destruya
cualquier copia del correo original.    Gracias.


-----Original Message-----
From: Harvey Hernandez (TSG) [mailto:hhernandez@thesolutiongroup.net]
Sent: Tuesday, June 22, 2010 3:49 PM
To: Monika Pfeiffer; raul@thesolutiongroup.net; 'Linda Fiorello'; Joseph Fiorello
Subject: RE: LAkes of carriage hills MBP 56

Hi Linda,

It looks like this community is 55 and over, what can we do? Are we able to negotiate a lease
with the parties occupying the property? Joe?

Please advice,

HH

1

-----Original Message-----
From: Monika Pfeiffer [mailto:monika@thesolutiongroup.net]
Sent: Wednesday, June 16, 2010 4:15 PM
To: Harvey Hernandez (TSG); raul@thesolutiongroup.net
Subject: LAkes of carriage hills


FYI
-----Original Message-----
From: Joseph Fiorello [mailto:joefiorellojr@gmail.com]
Sent: Wednesday, June 16, 2010 3:33 PM
To: camilo@thesolutiongroup.net; 'Monika Pfeiffer'; 'Linda Fiorello'; 'Frank Rodriguez'
Subject: FW: IMG00056-20100616-1133.jpg

Hello All,

This e-mail is to inform you all that while on my morning route I noticed that MBP 56 (4950
E. Sable Palm Blvd #210) is located within a 55 and older community and they do not allow
rentals. Attached is a picture of the community sign that clearly states that this is a 55
and above community.


Joe Fiorello
Vice President of Sales and Marketing
Luxury Realty Partners
6722 N. State Road 7
Coconut Creek FL, 33073
Office: 954-843-0020
Cell: 954-495-0303
Joefiorellojr@gmail.com


-----Original Message-----
From: joefiorellojr@gmail.com [mailto:joefiorellojr@gmail.com]
Sent: Wednesday, June 16, 2010 2:57 PM
To: joefiorellojr@gmail.com
Subject: IMG00056-20100616-1133.jpg


Sent from my Verizon Wireless BlackBerry No virus found in this incoming message.
Checked by AVG - www.avg.com
Version: 8.5.437 / Virus Database: 271.1.1/2940 - Release Date: 06/15/10 18:35:00

2